791 P.2d 633

The STATE of Arizona, Appellee,

v.

Stella GARZA RODRIGUEZ, aka Stella Garza Gonzales, aka Blanca Estella Rodriguez, Appellant.

No. CR–89–0190–PR.

Supreme Court of Arizona,
En Banc.

May 1, 1990.

Robert K. Corbin, Atty. Gen., and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, for appellee.

DeConcini McDonald Brammer Yetwin & Lacy by Wayne E. Yehling, Tucson, for appellant.

GORDON, Chief Justice.

Defendant, Stella Garza Rodriguez, petitions for review of the court of appeals decision affirming her conviction for armed robbery pursuant to A.R.S. § 13–1904. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24. We granted review to consider whether, under A.R.S. § 13–1904, an armed robbery conviction may be sustained if one committing a robbery threatens to use a weapon but no evidence is offered that a deadly weapon, dangerous instrument, or simulated deadly weapon was present. We conclude that such a conviction may not be sustained.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged by indictment with two counts of armed robbery. Each count alleged that defendant committed the robberies while armed with a simulated deadly weapon, in violation of A.R.S. § 13–1904(A), the armed robbery statute.

The evidence adduced at trial showed that in the early morning hours of February 23, 1988, defendant and two others drove to a self-service gas station in Tucson. Defendant exited the automobile and walked to the cashier's booth. Defendant approached the counter and, keeping her right hand out of sight, told the cashier to give her all of his money. Initially, the cashier smiled in disbelief but, after defendant said she was serious and would "shoot the smile off" his face, he gave her about $40 and ten cartons of cigarettes. Defendant instructed the cashier to lie down and then fled. The cashier testified that, al-though defendant implied she had a gun, he never saw her right hand nor did she make any movements indicating she had a gun.

Defendant and her two friends then proceeded to an all-night convenience store a short distance from the gas station. Defendant approached the clerk and told him to give her his money. After the clerk challenged defendant's authority to take the money, defendant stated she had a gun. The clerk then said: "I don't see a gun. If you've got one, show the darn thing." The clerk testified that defendant began moving her hands back and forth under the serape she was wearing. The clerk then said: "Well, never mind, don't get excited before you start shooting." The clerk then placed about $30 on the counter; defendant walked forward, scooped up the money and left. The clerk could not recall if he saw both hands at the same time.

At the close of the State's case-in-chief, defendant moved for a directed verdict of acquittal on the armed robbery charges pursuant to Rule 20, Arizona Rules of Criminal Procedure. Defendant argued that the State failed to produce substantial evidence to warrant a conviction under the indicted charges. According to defendant, the armed robbery statute requires at least some simulation of a deadly weapon; use of mere words, such as "I have a gun," or shuffling hands under a serape, is insufficient simulation. The State argued that the armed robbery statute only requires a threat to use a deadly weapon. The State asserted that the statutory requirements were met in the first incident when defendant stated she would "shoot the smile off" the clerk's face and in the second incident when she told the victim she had a gun while moving her hands under the serape.

The trial court denied the Rule 20 motion and submitted both counts to the jury. The jury found defendant guilty of armed robbery of the first victim, but guilty of only simple robbery of the second victim.

Defendant filed a timely appeal, contending insufficient evidence was presented to sustain the conviction for armed robbery. The court of appeals disagreed and af-

firmed, stating that a plain reading of the statute leads to the conclusion that "[t]here is no requirement that a weapon or simulated weapon be actually present at the time of the offense." 162 Ariz. 606, 785 P.2d 126 (App.1989). The court of appeals found that defendant's threat to shoot the victim satisfied the elements of armed robbery set forth in A.R.S. § 13–1904(A), which reads:

> A person commits armed robbery if, in the course of committing robbery as defined in § 13–1902, such person or an accomplice:
>
> 1. Is armed with a deadly weapon or a simulated deadly weapon; or
>
> 2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

Defendant petitioned for review from the court of appeals decision. We granted review pursuant to Rule 31.19, Arizona Rules of Criminal Procedure.

### DISCUSSION

This case requires us to interpret the meaning of the phrase "threatens to use" within the context of the armed robbery statute. The court of appeals affirmed the conviction in this case based on its interpretation of the "plain meaning" of the statute. We do not think this statute is so easily interpreted.

In prior decisions, this Court and the court of appeals interpreted an earlier version of the armed robbery statute to require the actual presence of a weapon. *See State v. Franklin*, 130 Ariz. 291, 635 P.2d 1213 (1981) (concurring with the court of appeals interpretation in *State v. Laughter*, 128 Ariz. 264, 625 P.2d 327 (App.1981)). In 1983, however, the legislature modified the armed robbery statute. The basic question before us then is what effect the

1983 statutory modification had on the required elements of the crime of armed robbery. To answer this question, we must once again examine the history of the robbery statute and determine whether the legislature, in fact, changed the meaning of the phrase "threatens to use" when it modified the statute in 1983.

### *1977 Robbery Statute*

In 1975, the Arizona Criminal Code Commission filed a report in which it proposed a three-tiered classification for robbery. The legislature subsequently enacted this proposed code with some modification in 1977. One of the modifications, the legislature's decision to not enact the recommended elements for aggravated robbery in their entirety, affects the interpretation of legislative intent with respect to the armed robbery statute.

As first enacted in 1977, the armed robbery classification provided:

> A. A person commits armed robbery if in the course of committing robbery as defined in section 13–190[1], such person or an accomplice:
>
> 1. is armed with a deadly weapon; or
>
> 2. uses or threatens to use a deadly weapon or dangerous instrument.
>
> B. For the purposes of this chapter, exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous is presumed evidence of its deadly or dangerous character.

Added by Laws 1977, ch. 142, § 73, eff. Oct. 1, 1978. The comments to this section explain that the actual presence of either a deadly weapon or dangerous instrument was a necessary element of the crime of armed robbery.[1]

---

1. The comments to the Commission's proposed code explain:

   > Section 190[4], new to existing law, reserves greatest severity for a robbery, as defined in § 190[2], effected by the presence of either a deadly weapon or dangerous instrument.... By virtue of its manifestly deadly design, a deadly weapon falls into this statute by its mere presence on the robber's person. Since

   > a dangerous instrument has an apparent legitimate, nondeadly use, such an item falls under this statute only when (1) it is actually on the person of the assailant and (2) is used or threatened to be used aggressively in the course of theft.

   Arizona Criminal Code Commission, Proposed Arizona Revised Criminal Code 189 (1975).

The report distinguished the various acts or circumstances comprising the armed robbery classification. In addition, the comments explained the term "threatens to use" within the context of the revised code. By way of illustration, the comments clarified that the threat to use a nonexistent pocketknife (a dangerous instrument under the term's definition) fell under aggravated robbery. The threat to use a concealed, present pocketknife, on the other hand, fell under armed robbery because the knife's actual presence gave rise to the greater penalty. Arizona Criminal Code Commission, Comment to Proposed Arizona Revised Criminal Code 189 (1975) (hereafter Code Commission Report).

In addition to the aggravated robbery element of commission of the robbery with the aid of an accomplice, the Commission recommended a second aggravating circumstance when the robbery was committed by a person representing "by word or gesture that he or she or an accomplice is armed with a deadly weapon or dangerous instrument." Code Commission Report at 186. The Commission noted:

> The second aggravating circumstance ... covers two forms of dangerous conduct: the representation of a *nonpresent* deadly weapon or instrument, ... or the exhibition of a *dummy* weapon. Both merit more severe treatment because of the greater recourse to violence.

*Id.* at 188 (emphasis added). Robberies involving asserted but nonpresent weapons, therefore, were relegated to the lesser offense of aggravated robbery.

In adopting the statute in 1977, however, the legislature deleted the second aggravating circumstance. R. Gerber, *Criminal Law of Arizona* 273 (1978). Given the legislative record and the rationale behind the separate categories of the crime of robbery, this Court and the court of appeals interpreted the legislature's decision as one indicating that verbal threats to use nonpresent deadly weapons and the use of present "dummy" or simulated weapons fell under the simple robbery statute. *State v. Franklin*, 130 Ariz. 291, 292, 635 P.2d 1213, 1214 (1981); *State v. Laughter*, 128 Ariz. 264, 267, 625 P.2d 327, 330 (App. 1981).

In *State v. Laughter*, the court of appeals interpreted the former version of the armed robbery statute as requiring the actual presence of a deadly weapon or dangerous instrument. The court found that the crime of armed robbery "is not satisfied by the defendant pretending to have a gun or even using a fake gun." 128 Ariz. at 267, 625 P.2d at 330. The court also noted that culpability was not based on the victim's belief, reasonable or otherwise, that a weapon was present. *Id.*

This Court agreed with the court of appeals' interpretation of the statute in *State v. Franklin*, 130 Ariz. at 292, 635 P.2d at 1214. Examining the rationale underlying the gradation of the crime, we said that where no weapon is actually present, the reason for the classification as armed robbery no longer exists; "the robber with the ... toy gun [or with the hand in the pocket simulating a gun] is not nice ... but he is not the dangerous type for whom the greater penalty is reserved." *Id.* at 293, 635 P.2d at 1215 (quoting W. LaFave and A. Scott, *Handbook on Criminal Law*, § 94, at 703 n. 67 (1972)).

### 1983 Statutory Modification

In 1983, the legislature amended the armed robbery statute, adding the words "or simulated deadly weapon" to A.R.S. § 13–1904(A)(1), (2). In addition, the legislature deleted the evidentiary presumption created by former A.R.S. § 13–1904(B), which treated any article fashioned or used in a deadly or dangerous manner as deadly or dangerous until proven otherwise. *See State v. Franklin*, 130 Ariz. 291, 293, 635 P.2d 1213, 1215 (1981); *see also* Code Commission Report at 186 (comments to proposed sub-section B). In this case, the State argues that the legislature also intended to modify the law, which previously required the actual presence of a weapon, to include verbal representation of the presence of a weapon within the scope of the phrase "or a simulated deadly weapon." Based on our review of the original enactment and the policies underlying gra-

dation of the crime of robbery, we must disagree with the State's interpretation.

We presume that the legislature knows the existing laws when it enacts or modifies a statute. *Daou v. Harris,* 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984). Additionally, we presume that by amending a statute, the legislature intends to change the existing law. *McCleod v. Chilton,* 132 Ariz. 9, 16, 643 P.2d 712, 719 (App.1981). Applying these principles and comparing the former and modified statutory language leads us to conclude that the 1983 statutory modification, at a minimum, changed the armed robbery statute by elevating the former evidentiary presumption regarding articles fashioned or used like deadly weapons to an element of the crime of armed robbery. A person charged with armed robbery, therefore, can no longer overcome the presumption in favor of the State with proof that the article involved in the robbery was unloaded, unworkable, or a fake.

We must next determine whether, in addition to elevating the former presumption, the legislature also intended to change the requirement that the robbery be committed with an actually present weapon. To assist in this determination, we consider the policies underlying the armed robbery statute as originally enacted and the entire system of related statutes. *See, e.g., State v. Sweet,* 143 Ariz. 266, 270, 693 P.2d 921, 925 (1985) (when determining legislative intent, court may consider both prior and subsequent statutes in *pari materia* ).

Unless some physical act, including a verbal threat, was used to coerce the surrender of property, a person can only be found guilty of theft. *See State v. Bishop,* 144 Ariz. 521, 524, 698 P.2d 1240, 1243 (1985). Once force or a threat of imminent physical injury sufficient to overpower the party robbed is used, the crime becomes simple robbery. A.R.S. §§ 13–1901(4) and –1902(A); *see Bishop,* 144 Ariz. at 524, 698 P.2d at 1243; *State v. Yarbrough,* 131 Ariz. 70, 73, 638 P.2d 737, 740 (App.1981). Something even more in the way of dangerousness is needed to elevate the crime from simple robbery to a greater felony. 2 W.

LaFave and A. Scott, *Substantive Criminal Law,* § 8.11, at 456 (1986). For example, aggravated robbery, one committed with the aid of an accomplice, is deemed an intermediate offense because it "reflects greater planning and a greater readiness for violence than appears in a solo performance." R. Gerber, *Criminal Law of Arizona* 274 (1978).

Within the armed robbery statute, several variable elements call for heightened punishment if the circumstances exist at the time of the robbery. The element of "uses a deadly weapon or dangerous instrument" in A.R.S. § 13–1904(A)(2), for example, is self-defining and reflects the legislature's determination that those who use deadly weapons or dangerous instruments deserve a greater punishment.

The A.R.S. § 13–1904(A)(1) elements of "armed with a deadly weapon" or "armed with a simulated weapon" are satisfied if the State establishes that such an instrument was within the immediate possession or available for use of the accused. *See State v. Barnett,* 111 Ariz. 391, 393, 531 P.2d 148, 150 (1975). Both elements reflect the policy that the greater punishment is reserved to deter the dangerous person actually capable of inflicting death or serious bodily harm or intending to create a life endangering environment by carrying a deadly or simulated deadly weapon. *See* Gerber, *supra,* at 275 (armed robbery classified as the most severe because the presence of a weapon reflects "a premeditated readiness for violence and possible injury or death"). The weapon, therefore, need not be displayed by the accused nor seen by the victim to satisfy these elements of the armed robbery statute.

The final element of the armed robbery statute, "threatens to use a deadly weapon or a dangerous instrument or simulated deadly weapon," is not as easily interpreted. Through the enactment of the original statute in 1977, the legislature advanced the policy that greater punishment is reserved for the person who creates the potential for increased danger to, or sudden and violent reaction by, the victim or bystanders. *See* Code Commission Report at

188. Thus, threatening to use an actually present deadly weapon or dangerous instrument was incorporated as one of the original elements of armed robbery because such a threat creates a more dangerous situation. The type of threat calling for heightened punishment, however, was more than the threat necessary to overpower the victim as in a simple robbery; it was one that increased danger to others.

■ Because mere words qualify as force sufficient to coerce the surrender of property for the lesser crime of simple robbery, the legislature must have intended to include some element other than mere words in the 1983 statutory modification. We read legislative enactments in such a way as to give the statute a fair and sensible meaning. *City of Phoenix v. Superior Court In and For Maricopa County,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). We must, if possible, give meaning to each clause and consider the effects and consequences as well as the spirit and purpose of the law. *Frye v. South Phoenix Volunteer Fire Co.,* 71 Ariz. 163, 167–68, 224 P.2d 651, 654 (1950).

■ In this instance, therefore, we interpret the effect of the added language "or a simulated deadly weapon" as indicating that a simulated deadly weapon is an alternative to a deadly weapon. In other words, the "simulation" is not that a robber feigns or pretends to have a weapon on their person but rather that the person commits the robbery with a pretend deadly weapon. *See State v. Felix,* 153 Ariz. 417, 419, 737 P.2d 393, 395 (App.1986) (defendant's use of a nasal inhaler to simulate the barrel of a gun pressed against the victim's body constitutes "simulated deadly weapon" within the meaning of the revised armed robbery statute).

We conclude that a weapon, whether it be an actual deadly weapon, a dangerous instrument, or a simulated deadly weapon, must actually be present and used in a threatening manner to satisfy the "threatens to use" element of the armed robbery statute. *Accord State v. Moriarty,* 107 Wis.2d 622, 321 N.W.2d 324, 329 (App.1982) (the phrase "use or threat of use" con-

tained in Wisconsin's armed robbery statute requires proof that the defendant was armed with a deadly weapon or an article fashioned to resemble a deadly weapon *and* that defendant used or threatened to use such an article during the commission of the robbery).

In reaching this conclusion, we admittedly are influenced by the policy implication of holding otherwise. If it makes no difference whether a weapon is present, and an unarmed person faces the same penalty as a person actually armed with a weapon, use of weapons, by implication, is encouraged or at least not discouraged. We do not believe the legislature could have intended such a result. If we are wrong, however, the legislature may certainly correct our interpretation by clarifying the statutory language.

## CONCLUSION AND DISPOSITION

Based on our review of the policies underlying the armed robbery statute and the logical effect of the 1983 statutory modification, we hold that a mere verbal threat to use a deadly weapon, unaccompanied by the actual presence of a deadly weapon, dangerous instrument or simulated deadly weapon, does not satisfy the statutory requirement for a charge of armed robbery.

In the present case, both victims testified that they never saw a gun or any other article fashioned to resemble a deadly weapon. Two witnesses, the driver and occupant of the automobile used the evening of the robberies, both testified that defendant did not have a gun. Although the first victim testified that defendant implied the existence of a gun by saying she would "shoot the smile off his face," he never saw a weapon.

The jury found defendant guilty of armed robbery on the above evidence. These facts are insufficient to support a charge of armed robbery and the trial court, therefore, erred in denying defendant's motion for acquittal on the armed robbery charge. The record only permits conviction and sentencing for robbery under A.R.S. § 13–1902. Accordingly, the judgment is

ordered revised to reflect convictions for simple robbery on both counts. The matter is remanded to the trial court for re-sentencing in accordance with this decision.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.