829 P.2d 1212

**STATE of Arizona, Appellee,**

v.

**Kirk Anthony BOUSLEY, Appellant.**

**STATE of Arizona, Appellee,**

v.

**Samuel Henry ELLISON, Appellant.**

**Nos. CR–91–0156–PR, CR–91–0297–PR.**

Supreme Court of Arizona,
En Banc.

April 16, 1992.

Grant Woods, Atty. Gen. by Jessica Gifford Funkhouser, Former Chief Counsel, Criminal Div., Ronald L. Crismon, Joseph T. Maziarz, Susanna C. Pineda, Asst. Attys. Gen., Janet Keating, Former Asst. Atty. Gen., Phoenix, for State.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Stephen R. Collins, Deputy Public Defenders, Phoenix, for appellants.

OPINION

CORCORAN, Justice.

In this consolidated proceeding, we review two court of appeals opinions that addressed the same issue but reached opposite conclusions. *State v. Bousley,* 169 Ariz. 389, 819 P.2d 975 (App.1991); *State v. Ellison,* 169 Ariz. 424, 819 P.2d 1010 (App. 1991). We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

*Factual and Procedural History*

On January 5, 1990, a Maricopa County Grand Jury indicted codefendants Kirk Anthony Bousley and Samuel Henry Ellison on numerous counts of armed robbery. Bousley and Ellison later entered into separate written plea agreements. Both Bousley and Ellison now appeal the convictions that were based on their pleas.

*A. Bousley*

Pursuant to his plea agreement, Bousley pleaded no contest to two counts of armed robbery under A.R.S. § 13–1904, each a class 2 felony, committed while on probation and with one prior felony conviction. At the time he entered his pleas, the court advised Bousley of all of his constitutional rights, which he waived. Based on his pleas, the court sentenced Bousley to an aggravated term of 15 years flat time on each count, the sentences to run concurrently with each other but consecutively to the sentence resulting from his probation violation.

On appeal, Bousley cited *State v. Rodriguez,* 164 Ariz. 107, 791 P.2d 633 (1990), and argued that the factual bases for his pleas did not support his convictions and sentences. The court of appeals agreed and vacated Bousley's pleas, reversed his convictions and sentences, and remanded the cause for further proceedings.

In vacating Bousley's plea, the court of appeals found insufficient the following factual bases provided by the state at the change of plea hearing. On December 27, 1989, Bousley entered a Circle K store while an accomplice waited in a getaway car. Bousley held his hand under his clothing in such a way that he appeared to have a handgun in his pocket and demanded money from the clerk. The clerk locked the register and Bousley left the store, grabbing $26 worth of cigarettes as he left.

Also on December 27, 1989, Bousley entered a second Circle K store, positioned his hand under his clothing in a way that made it appear as if he had a handgun under his shirt, and demanded that the clerk give him all the money in the register or he would "blast" her. The clerk opened the register and Bousley took $100. Bousley then left the Circle K store and got into a getaway car driven by Ellison, and the two left.

## B. *Ellison*

Pursuant to a written plea agreement, Ellison pleaded no contest to two counts of armed robbery under A.R.S. § 13–1904, each a class 2 felony. At the time he entered his pleas, the court advised Ellison of all of his constitutional rights, which he waived. Based on his pleas, the court sentenced Ellison to 7 years imprisonment on the first count, followed by a consecutive 5–year probationary term on the second count.

On appeal, Ellison argued that no factual basis existed for his pleas because the facts underlying his no contest pleas were indistinguishable from those presented in *Rodriguez*. The court of appeals distinguished *Rodriguez* and affirmed Ellison's convictions and sentences.

In affirming Ellison's convictions and sentences, the court of appeals relied on the following factual bases provided by the state at the change of plea hearing. On December 27, 1989, Ellison and Bousley demanded money from the clerk of a Texaco convenience store. When the clerk told them that he had no money, Ellison walked behind the counter and punched him. The clerk immediately opened the register and Ellison and Bousley took $74. During the course of the robbery, both Ellison and Bousley held their hands under their clothing in such a way that they appeared to have handguns in their pockets.

Also on December 27, 1989, Ellison's accomplice, Bousley, entered a Circle K store and, while positioning his hands under his clothing in a way that made it appear as if he had a handgun under his shirt, demanded money from the clerk. Bousley threatened to "blast" the clerk if she did not cooperate and open the register. The clerk opened the register and Bousley took $100. Following the robbery, Bousley jumped into a getaway car driven by Ellison.

### *Discussion*

We granted review in these cases to determine whether a defendant may be convicted of armed robbery under A.R.S. § 13–1904 when he commits robbery while positioning a part of his body under his clothing in such a way that he appears to have a deadly weapon. We agree with the *Ellison* opinion and hold that a defendant may be so convicted.

Both Ellison and Bousley rely on *Rodriguez* in arguing that their pleas have no factual basis. In *Rodriguez*, the defendant was convicted of armed robbery under A.R.S. § 13–1904, which reads,

A. A person commits armed robbery if, in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

1. Is armed with a deadly weapon or a simulated deadly weapon; or

2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

The evidence in *Rodriguez* established that the defendant approached a gas station cashier and, keeping her right hand out of sight, demanded money. When the cashier smiled in disbelief, the defendant stated that she was serious and threatened to "shoot the smile off" the cashier's face. The cashier then gave the defendant money and cigarettes and the defendant fled. At

trial, the cashier testified that although the defendant implied that she had a gun, he did not see the defendant's hands, nor did the defendant make any movements to indicate that she had a gun.

On review to this court, we concluded that "a weapon, whether it be an actual deadly weapon, a dangerous instrument or a simulated deadly weapon, *must actually be present*" to support a conviction for armed robbery under § 13–1904. *Rodriguez*, 164 Ariz. at 112, 791 P.2d at 638 (emphasis added). We held that the "simulation" required by law "is not that a robber feigns or pretends to have a weapon on their person but rather that the person commits the robbery with a pretend deadly weapon." *Rodriguez*, 164 Ariz. at 112, 791 P.2d at 638. Because no weapon or simulated weapon was actually present in *Rodriguez*, *i.e.*, the defendant simply implied that she had a weapon—she did not hold her hands under her clothing in a way that made it appear as if she had a deadly weapon—we found the evidence insufficient to support an armed robbery conviction and ordered the judgment revised to reflect convictions for simple robbery.

The crucial fact in *Rodriguez* was that nothing resembling a weapon was actually present; the defendant simply implied that she had a gun when she threatened to "shoot the smile off" the cashier's face. Here, on the other hand, defendants did more than simply imply that they had guns; they positioned their hands under their clothing in such a way that they appeared to have deadly weapons—guns. Therefore, simulated deadly weapons were actually present. The facts of these cases are thus distinguishable from the crucial facts in *Rodriguez* that required the reversal of the defendant's convictions and sentences in that case.

Having concluded that *Rodriguez* is not controlling in these cases, we now consider whether defendants' conduct satisfies the elements of § 13–1904. We believe that it does. As to Bousley's conviction on the first count, his conduct during the first Circle K robbery clearly falls under § 13–1904(A)(1). During that robbery, Ellison was "armed with a ... simulated deadly weapon"—he was armed with a simulated gun. As to Bousley's conviction on the second count, his conduct during the second Circle K robbery clearly falls under § 13–1904(A)(1) *and* (2). During that robbery, Bousley was both "armed with a ... simulated deadly weapon"—he was armed with a simulated gun, and he "threatened to use [the] simulated deadly weapon"—he threatened to "blast" the Circle K clerk. Accordingly, we conclude that a factual basis exists for Bousley's pleas.

As to Ellison's conviction on the first count, his conduct during the Texaco robbery clearly falls under § 13–1904(A)(1). During that robbery, Ellison was "armed with a ... simulated deadly weapon"—he was armed with a simulated gun. As to Ellison's conviction on the second count, his conduct during the Circle K robbery clearly falls under § 13–1904(A)(1) *and* (2). During that robbery, Ellison's accomplice, Bousley, was both "armed with a ... simulated deadly weapon"—he was armed with a simulated gun, and he "threatened to use [the] simulated deadly weapon"—he threatened to "blast" the Circle K clerk. Accordingly, we conclude that a factual basis exists for Ellison's pleas.

### Conclusion

The crucial facts absent in *Rodriguez* that required the reversal of the defendant's convictions and sentences in that case are present in these cases. Thus, *Rodriguez* is not controlling. Like the court of appeals in *Ellison*, we have searched the record in *Bousley* for fundamental error but have found none. A.R.S. § 13–4035. We conclude that the facts present in these cases provide ample factual bases for defendants' pleas, and we therefore affirm both Ellison's and Bousley's convictions and sentences. The *Ellison* opinion is approved and the *Bousley* opinion is vacated.

FELDMAN, C.J., MOELLER, V.C.J., and CAMERON and GORDON, JJ., (Retired), concur.