892 P.2d 216

**STATE of Arizona, Appellee,**

v.

**Russell Lee CID, Appellant.**

**No. 1 CA–CR 93–0430.**

Court of Appeals of Arizona, Division 1, Department C.

March 23, 1995.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Joseph Julius Hessinger, Pinetop, for appellant.

**498**

## OPINION

EHRLICH, Presiding Judge.

Russell Lee Cid ("defendant") appeals from his conviction and sentence for second-degree escape. For the following reasons, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Shortly after 7:00 p.m. on November 27, 1992, Navajo County Jail guards and Sheriff's Deputies, responding to a security alarm, discovered the defendant and another inmate in the ceiling of the jail. A later search of the ceiling area revealed a mattress cover containing some legal papers and a shirt, with its sleeves and neck sewn shut, containing the following items: a roll of toilet paper, a pair of socks, a bandage, two shampoo containers, two toothbrushes, one tube of toothpaste, ten jelly packages, eight sugar packages, a Bible, two "hair ties," some tobacco, two packs of cigarettes, a deodorant dispenser, two towels, sundry candy bars, some notebook paper and a cheese crisp. The defendant was charged with second-degree escape, a class 5 felony. Ariz.Rev.Stat. Ann. ("A.R.S.") § 13–2503.[1]

At trial, the defendant testified that it had not been his intention to escape but, rather, to use the ceiling area as a means of gaining access to the "holding tank" where the female prisoners were detained. The defendant's companion also testified that this was their intent. However, the defendant admitted that, while previously incarcerated in the Arizona Department of Corrections in Florence, he had learned from another inmate,

who once had escaped from the Navajo County Jail, that it was possible to use the ceiling as a means of escape.

The jury found the defendant guilty of second-degree escape.[2] After finding that the aggravating factors outweighed the mitigating ones, the trial court sentenced the defendant to a four-year prison term, consecutive to the term he was serving. A.R.S. § 13–2503(B). The defendant appealed.

### DISCUSSION

Four issues are presented on appeal: (1) whether the trial court erred in determining the correct mental state for second-degree escape; (2) whether the state adequately proved the requisite mental state; (3) whether the court erred in its reasonable doubt instruction; and (4) whether the court erred in determining aggravating and mitigating factors. We resolve these issues seriatim, joining the first two.

### A. Sufficiency of the Evidence, Including the Culpable Mental State for Second–Degree Escape

■ At the conclusion of the state's case-in-chief, the defendant moved for a judgment of acquittal, see Ariz.R.Crim.P. 20, arguing that the state had failed to prove that he had intended to escape. In denying the motion, the trial court said that the culpable mental state for second-degree escape was not intent[3] but knowledge.[4] The defendant assigns this determination as error. We disagree.

---

1. The statute provided at the time in relevant part:

   A. A person commits escape in the second degree by knowingly:

   1. Escaping or attempting to escape from a correctional facility; ...

   Changes to this section affected by 1993 Ariz. Sess.Laws 255, § 36, effective January 1, 1994, have no bearing upon this case.

2. The defendant also had been charged with destruction of or injury to a public jail but was acquitted of this offense.

3. " 'Intentionally' or 'with the intent to' means, with respect to a result or to conduct described by a statute defining an offense, that a person's

   objective is to cause that result or to engage in that conduct."

   A.R.S. § 13–105(6)(a). The statutory definition in effect at the time of the escape was unchanged by the latest amendment to the statute, which took effect on January 1, 1994.

4. " 'Knowingly' means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstances exist. It does not require any knowledge of the unlawfulness of the act or omission."

   A.R.S. § 13–105(6)(b). The statutory definition of "knowledge" was unchanged by statutory amendments effective January 1, 1994.

In order to withstand a motion for a judgment of acquittal, "the state must produce enough evidence that a reasonable person could conclude that the defendant is guilty beyond a reasonable doubt." *State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162 (*citing State v. Nunez,* 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991)), *cert. denied,* — U.S. —, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993). Upon review, the evidence and the inferences to be drawn from the evidence are considered in the light most favorable to sustaining the verdict. *Id.* 176 Ariz. at 52, 859 P.2d at 162. Our resolution of this matter, however, requires that we first resolve the proper culpable mental state for second-degree escape.

Essentially, the defendant argues that, when the second-degree escape statute was amended in 1983 to add "attempting to escape," [5] the legislature incorporated the substantive law of preparatory offenses contained in A.R.S. section 13–1001.[6] As a result, he contends, the trial court's determination that "[a]ttempt [in section 13–2503] is used in its normal every day usage" and that the legislature "did not intend to incorporate the substantive law of attempt into that statute" was a misstatement of the law and constitutes reversible error. We believe that the rules of statutory construction dictate otherwise.

When interpreting the meaning of particular statutory provisions, we seek to discern the intent of the legislature ... look[ing] primarily to the language of the statute itself and giv[ing] effect to the statutory terms in accordance with their commonly accepted meanings, *see* A.R.S. § 1–213, 'unless the legislature has offered its own definition of the words or it appears from the context that a special meaning was intended.'

*State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992) (*quoting Mid Kansas Fed. S & L v. Dynamic Dev. Corp.,* 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991)); *accord State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (words given usual and commonly-understood meaning unless legislature clearly intended different one); *State v. Flores,* 160 Ariz. 235, 240, 772 P.2d 589, 594 (App.1989) (words of statute given ordinary meaning unless it appears from context different meaning should control). Additionally, "[w]e must, if possible, give meaning to each clause and consider the effects and consequences as well as the spirit and purpose of the law." *State v. Garza Rodriguez,* 164 Ariz. 107, 112, 791 P.2d 633, 638 (1990).

Section 13–2503 reasonably is read to include the substantive crime of attempting or trying to escape. The plain and ordinary meaning ascribable to the term "attempting" in this context is that found in *Webster's New Universal Unabridged Dictionary* 121 (2d ed. 1983): "to try to do, ... to try to, to endeavor." The defendant's contrary contention that the legislature intended to incorporate the law of attempt from section 13–1001 and, thereby, to give the phrase "attempting to escape" in section 13–2503 a "special meaning" is unpersuasive. The more logical and compelling arguments support the trial court's reading of the statute.

A complementary rule of statutory construction holds that, whenever possible, statutes which are in *pari materia* are read together and harmonized, *see e.g., State v. Sweet,* 143 Ariz. 266, 270–71, 693 P.2d 921, 925–26 (1985); *State v. Takacs,* 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991), to avoid rendering any clause, sentence or word "superfluous, void, contradictory or insignificant." *State v. Johnson,* 171 Ariz. 39, 42, 827

---

5. *See* 1983 Ariz.Sess.Laws 201, § 2. Sections 13–2502 (third-degree escape) and 13–2504 (first-degree escape) were similarly amended.

6. Section 13–1001, in relevant part, states:
   A. A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person:
   \* \* \* \* \* \*

2. Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense; ....

P.2d 1134, 1137 (App.1992) (*quoting State v. Arthur,* 125 Ariz. 153, 155, 608 P.2d 90, 92 (App.1980)). A harmonious reading of the two sections at issue here also requires rejection of the defendant's incorporation argument because it renders the clause "attempting to escape" in section 13–2503 superfluous at best and contradictory at worst.

■ In *State v. Sanchez,* 174 Ariz. 44, 47, 846 P.2d 857, 860 (App.1993), this court looked to the Model Penal Code ("Code"), "a source of the current Arizona statutes," to support its holding that attempted conspiracy was not a cognizable offense in Arizona. In embracing the Code's rejection of the concept of a preparatory offense to a preparatory offense, the following instructive portion of the commentary to section 5.01 at 363 (1985) was quoted:

> One of the questions frequently litigated is whether there can be an attempt to attempt. As an abstract proposition of law, the construction has been condemned by a majority of cases considering the issue, and it seems as a matter of sound analysis that the construction is not necessary. An attempt to attempt can always be considered a more remote attempt to commit the same substantive crime, provided of course that the conduct is sufficient to meet the basic test of liability.

The defendant's incorporation argument fails precisely because it espouses the exact situation condemned by the Code and this court, namely, the existence of a preparatory offense to a preparatory offense. In contrast, the construction of section 13–2503 which we hold the legislature intended avoids this dilemma by making the crime of "attempting to escape" a substantive one.

Moreover, when examining the effects and consequences of the 1983 amendment to section 13–2503, "we presume that the legislature knows the existing law when it enacts or modifies a statute." *Garza Rodriguez,* 164 Ariz. at 111, 791 P.2d at 637. Given the legislature's awareness of section 13–1001 when it amended section 13–2503 to add the "attempting to escape" language, it seemingly made a conscious decision to make "at-

tempting to escape" a substantive crime under section 13–2503. A contrary reading would, as illustrated above, lead to ridiculous results. *See City of Phoenix v. Superior Court,* 144 Ariz. 172, 177, 696 P.2d 724, 729 (App.1985) (statute not construed to lead to absurd effect). Our reading of sections 13–1001 and 13–2503 gives proper effect to both sections.

The purpose and policies underlying the punishment of escape also support our determination. The law punishes escape in order to deter such behavior and, thereby, to ensure the integrity of the state's custodial authority and to protect the public from persons who already have proven that they require incarceration. Punishing those who attempt to escape in the same manner is merely a logical extension of the same penological principles.

■ We therefore turn to whether the evidence at trial supported the defendant's conviction for that offense. The finder-of-fact, not the appellate court, weighs the evidence and determines the credibility of witnesses. *E.g., State v. Pike,* 113 Ariz. 511, 514, 557 P.2d 1068, 1071 (1976). Accordingly, this court will not disturb the jury's decision if there is substantial evidence to support its verdict. *State v. Atwood,* 171 Ariz. 576, 597, 832 P.2d 593, 614 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

■ The record contains ample evidence. Certainly the defendant's testimony indicating that he knew that he was not allowed to leave his cell and his admission that he knew that escape was possible through the ceiling are compelling. Arizona statutory section 13–2501(2) defines "correctional facility," in relevant part, as "*any* place used for the confinement or control of a person...." (Emphasis added).[7] Subsection (4) defines "escape" as a "departure ... from a correctional facility in which a person is held or detained with knowledge that such departure is unpermitted...." The defendant opines that the definition of "correctional facility"

---

7. Contrary to the position now taken by the defendant, he was not tried for escaping from "custody" but for escaping from a "correctional facility."

should be limited to include only the jail complex as a whole, but the more practical and reasonable interpretation of these subsections includes the individual holding and jail cells which are the components of the facility and the units used for the "confinement or control of a person." When the defendant, knowing that his actions were unsanctioned, left his cell and entered the ceiling area of the jail, he committed second-degree escape. That the defendant was caught before fleeing the entire complex does not alter this analysis. As said above, attempting to escape is equally punishable as second-degree escape under section 13–2503.

The defendant maintains that his uncontroverted testimony regarding his wish to reach the female prisoners was sufficient to counter the evidence that he escaped or attempted to escape under the statute. This claim apparently was unpersuasive to the jury and we will not second-guess the jury's decision on this matter. *Atwood,* 171 Ariz. at 597, 832 P.2d at 614.

### B. Reasonable Doubt Instruction

The trial court, without objection, gave the following reasonable-doubt instruction to the jury:

> The term reasonable doubt means doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all the evidence or from the lack of evidence.

The defendant now argues that this instruction was error based on the reference to "possible doubt." Because this issue was not raised in the trial court, we review it only for fundamental error. Ariz.R.Crim.P. 21.3(c); *see also State v. Duzan,* 176 Ariz. 463, 469, 862 P.2d 223, 229 (App.1993). This instruction is not fundamental error. *State v. West,* 176 Ariz. 432, 444, 862 P.2d 192, 204 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

### C. Aggravating and Mitigating Factors

The defendant finally contends that the trial court failed to consider the mitigating factors which he put forward and, consequently, improperly imposed an aggravated sentence. In light of the discretion with which trial courts are vested in considering mitigating circumstances, *see State v. Webb,* 164 Ariz. 348, 355, 793 P.2d 105, 112 (App. 1990), the defendant's claim cannot be sustained.

The trial court is not required to articulate any factual findings as to mitigating factors which it does not find to be true or which will not be relied upon in sentencing a defendant. *E.g., State v. Winans,* 124 Ariz. 502, 504–05, 605 P.2d 904, 906–07 (App.1979). Furthermore, an appellate court presumes that the trial court considered all relevant mitigating factors in rendering its sentencing decision. *State v. Everhart,* 169 Ariz. 404, 407, 819 P.2d 990, 993 (App.1991).

In the instant case, the record reveals several salient points on this issue: (1) the trial court was made aware of mitigating factors by the defendant; (2) the court read the pre-sentence report in which were found no mitigating factors; (3) the court found three specific aggravating factors—the defendant's prior felony conviction for attempted first-degree murder, his conviction for a misdemeanor while incarcerated, and the presence of an accomplice in the escape; and (4) the court specifically found that the aggravating factors substantially outweighed the mitigating factors. Based upon such a record, we find nothing that convinces us that the court abused its discretion in imposing an aggravated sentence.

### CONCLUSION

We have held that the culpable mental state for second-degree escape is "knowledge," that the evidence supported the defendant's conviction of the crime, that there was no error in the reasonable-doubt instruction, and that the trial court correctly imposed an aggravated sentence. We also have reviewed the entire record for fundamental error, pursuant to our obligation under A.R.S. section 13–4035, and have found none. Accordingly, we affirm the defendant's conviction and sentence.

WEISBERG and VOSS, JJ., concur.