NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MATTHEW ELLIOT PETERSEN, *Appellant*.

No. 1 CA-CR 14-0679
FILED 1-5-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-428984-001
The Honorable Peter C. Reinstein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Samuel A. Thumma joined.

**K E S S L E R**, Judge:

**¶1**        Matthew Elliot Petersen appeals his conviction for burglary in the first degree, a class 2 felony. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-1507 (2010), -1508 (2010).[1]  Counsel for Petersen filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), requesting that this Court search the record for fundamental error. Petersen also filed a supplemental brief *in propria persona* requesting this Court review four issues.  After reviewing the entire record we conclude the evidence is sufficient to support the verdict and sentence and there is no fundamental error.  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[2]**

**¶2**        The victim, MO, came home to discover his house had been burglarized. In one of the rooms, a window was broken and partially slid open, and there was glass all over the carpet along with a rock.  As MO

---

[1] We cite the current version of applicable statutes unless revisions material to this decision have occurred since the events in question.

[2] Before trial, Petersen moved to obtain information related to any insurance claim MO made in connection with the instant burglary, and for access to inspect the crime scene.  Petersen argued the insurance information was necessary to rebut the State's allegation of the amount of the stolen property as an aggravating factor and may go to the issue of restitution. *See* A.R.S. § 13-701(D)(3) (Supp. 2015).  After a hearing, the court denied the motion on both bases determining that the requests were inconsistent with MO's victim's rights. Neither issue was ever re-urged.  Ultimately the State did not pursue this aggravating factor, and the court did not sentence Petersen in a way that accounted for the factor.  Restitution was not sought or ordered.

walked around he discovered that his Ruger 9mm gun and other items were missing.

¶3 MO called the police and Officer GN responded and investigated the scene. GN concluded the broken window was the point of entry into the home. GN was able to lift one good fingerprint from the inside of the broken window.

¶4 AL, a forensic scientist at the crime lab latent print comparative section, confirmed that the fingerprint taken by GN matched Peterson. MO testified that he bought the approximately 4.5-year-old foreclosed home "as is" from the bank in 2010 (about 3.5 years prior to the trial), and he had to have his carpets and windows professionally cleaned before he moved in. MO also testified that he has since had his windows professionally cleaned twice and he has cleaned the windows himself as well but that no other contractors had been inside the home.

¶5 CB, a general contractor, testified for the defense that Petersen worked with him off and on for eight to ten years at CB's flooring, electrical, and plumbing company. CB said that he recalled doing carpet installation work along with Petersen in a vacant house that he believed was MO's house about four years prior to trial. CB explained that they do not typically wear gloves when doing work and that sometimes they open windows to bring carpet inside or for ventilation. FR testified as an expert for the defense in the area of fingerprint preservation. He testified that a fingerprint could last on a surface for a long time, and that there is no way of knowing when a fingerprint was left on a surface.

¶6 The jury received instructions consistent with the offense charged in the indictment and the applicable law. The jury convicted Petersen as charged.

¶7 After a trial on Petersen's prior convictions, the superior court found the convictions proven as alleged. After an aggravation/mitigation hearing, the jury found the existence of two aggravating factors: expectation of pecuniary value, A.R.S. § 13-701(D)(6), and physical, emotional, or financial harm to the victim who testified at trial, A.R.S. § 13-701(D)(9). The court found mitigating factors and sentenced Petersen as a category 3 offender (two historical priors), *see* A.R.S. § 13-703(C) (Supp. 2015) and A.R.S. § 13-105(22)(d) (Supp. 2015), to a mitigated term of thirteen years' imprisonment. A.R.S. § 13-703(C), (J); *see also* 2013-2014 Criminal Code Sentencing Provisions at 1 (Non-dangerous, repetitive offenses), available at

3

http://www.azcourts.gov/Selfhelp/CriminalLaw/CriminalCodeSentenci ngChart.aspx (last visited December 17, 2015). The court also awarded Petersen 250 days of presentence incarceration credit.

**¶8**　　　　The superior court granted Petersen a delayed appeal pursuant to Arizona Rule of Criminal Procedure 32.1(f). Petersen's appeal is therefore timely and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2003), 13-4031 (2010), and -4033(A)(1) (2010).

## DISCUSSION

**¶9**　　　　In an *Anders* appeal, we review the entire record for fundamental error. *State v. Richardson*, 175 Ariz. 336, 339 (App. 1993). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90 (1984)). To obtain a reversal, the defendant must also demonstrate that the error caused prejudice. *Id.* at ¶ 20.

**¶10**　　　　Petersen raises four main issues in his supplemental brief. In issue (1) Petersen contends the evidence was insufficient because there was no proof that MO owned the allegedly stolen items or that Petersen took/possessed any of the items.[3] Issue (2) also relates to the sufficiency of the evidence because Petersen claims the lack of evidence to support the conviction for first degree burglary, as well as mitigating factors outweighing aggravating factors, renders his sentence excessive.

**¶11**　　　　Petersen also contends in issues (3) and (4) that the prosecutor committed misconduct by failing to disclose that MO's house had been previously burglarized and that the superior court committed error by denying Petersen's motion for information related to MO's previous insurance claims.

---

[3] Petersen also claims that the value of the items was not established and thus, charging Petersen with a higher class of crime was not justified. However, the value of the items stolen is not relevant to whether burglary is proven. *Compare* A.R.S. § 13-1802(G) (Supp. 2015) (classifying different degrees of theft based on value of property stolen), *with* A.R.S. §§ 13-1507, -1508 (classifying different degrees of burglary based on factors other than value of items stolen).

¶12        Petersen requests remand for an evidentiary hearing and/or new trial and maintains that his sentence should be reduced.

## I.        Sufficiency of the evidence of first degree burglary

¶13        On review, we view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against the defendant. *State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25 (1976)).

¶14        Burglary in the first degree requires proof that Petersen: (1) "enter[ed] or remain[ed] unlawfully in . . . a residential structure"; (2) "with the intent to commit any theft . . . therein"; and (3) knowingly possess[ed] . . . a deadly weapon";[4] (4) "in the course of committing any theft."[5]  A.R.S. §§ 13-1507(A) (second degree burglary), -1508(A) (first degree burglary).[6]

¶15        Here the only evidence linking Petersen to the burglary was his fingerprint on the inside of the broken window which according to

---

[4] The court did not use the phrase "deadly weapon," in instructing on the elements of first degree burglary and instead used "firearm," but gave an instruction regarding the definition of a firearm.  The instructions were correct because "'[d]eadly weapon' means anything designed for lethal use, including a firearm." A.R.S. § 13-105(15).

[5] "'In the course of committing' means any acts that are performed by an intruder from the moment of entry to and including flight from the scene." A.R.S. § 13-1501(7) (Supp. 2015).  The court did not explicitly use the phrase "in the course of committing" when instructing on the elements of first degree burglary and instead simply used the definition itself with the first degree burglary instruction.

[6] The lesser included offense of burglary in the second degree is a class 3 felony and requires proof of the first two elements.  A.R.S. § 13-1507. Petersen maintains that he should have been convicted only of third degree burglary (a class 4 felony) which requires proof of "entering or remaining unlawfully in . . . a residential yard."  A.R.S. § 13-1506 (2010).  The facts here (i.e. Petersen's fingerprint was found on the inside of a broken window to MO's home from which items were taken) do not support the potential applicability of the third degree burglary statute.

police officer testimony was the point of entry into the home. This is sufficient evidence to infer that Petersen entered the home. A.R.S. § 13-1501(3) (defining entry); *State v. Coleman*, 147 Ariz. 578, 580 (App. 1985) ("The evidence of entry is the defendant's fingerprints found on both sides of a piece of glass of the same shape and size as the piece missing from the victim's broken window.").

¶16 The fingerprint on the inside of the broken window is also sufficient to determine Petersen had the intent to commit theft when he entered. *See State v. Malloy*, 131 Ariz. 125, 130 (1981) (determining jury "could have found that the [defendant] had the specific intent necessary to commit burglary in the third degree from the fact that he broke the window."); *State v. Taylor*, 25 Ariz. App. 497, 499 (1976) (explaining that intent to commit theft can be proven by circumstantial evidence and inference of the intent necessary for conviction of burglary may be drawn when unauthorized entry into the premises is gained by force); *accord State v. Kindred*, 232 Ariz. 611, 614, ¶ 11 (App. 2013) (stating "a defendant's forced entry into a structure permits a jury to infer that [the] defendant had the requisite specific intent for burglary."); *State v. Belyeu*, 164 Ariz. 586, 591 (App. 1990) (citing cases and stating "[a] jury may infer the intent necessary to commit burglary from the fact that [the defendant] gained entry by breaking a window."); *Coleman*, 147 Ariz. at 580 (explaining in case where defendant's fingerprints were on both sides of a piece of broken glass from window that "[t]his kind of breaking and entry alone justifies an inference of an intent to commit a theft of property inside.").

¶17 Thus, the first two elements, intent to commit theft upon entry, are satisfied. However, unlike lesser degrees of burglary, first degree burglary requires proof that Petersen knowingly possessed a deadly weapon "in the course of committing . . . [a] theft." A.R.S. §§ 13-1508(A), -1501(7). *See supra* footnotes 4-6. The offense of theft, and specifically the elements of control and intent, A.R.S. §§ 13-1801 (Supp. 2015), -1802 (Supp. 2015), may be inferred from the breaking of the window, the fingerprint evidence on burglarized private property, and the missing items. *Coleman*, 147 Ariz. at 580 ("Both the intent to deprive and the control required for a theft conviction can be inferred from the unauthorized entry, the absence of the victim's possessions, the presence of defendant's fingerprints in a place inaccessible to the general public, and the absence of any other explanation."). In *Coleman*, we affirmed the defendant's convictions for theft and burglary even though none of the missing property was found in the defendant's possession or ever recovered and the only evidence linking the defendant to the stolen items was a fingerprint on the glass of a broken window. 147 Ariz. at 580-81.

¶18        Contrary to Petersen's contention there was no evidence he possessed MO's gun, Petersen's fingerprint on the inside of the broken window along with the missing gun and other items, permit an inference that he stole the gun during the burglary and as such possessed a gun in the course of committing theft.  A reasonable juror could conclude Petersen "knowingly possessed" MO's gun, a deadly weapon, at some point during the burglary.  *See* A.R.S. § 13-1501(7) (defining in the course of committing as between the time of entry and leaving the scene); A.R.S. § 13-1508(A) (requiring proof the defendant knowingly possessed a deadly weapon); A.R.S. § 13-105(15) (defining deadly weapon to include a firearm); *see also State v. Tabor*, 184 Ariz. 119, 120 (1995) (explaining that possessing a deadly weapon as loot during a burglary is sufficient to support a conviction for first degree burglary).

¶19        Here the jury heard defense evidence suggesting that Petersen may have left a fingerprint on the inside of MO's window years prior when he was doing work in the home with CB.  It also heard evidence that MO had his windows cleaned on multiple occasions since the time Petersen would have been in the home and thereafter while living in the home.  It was up to the jury to consider and weigh the evidence and witness credibility and to resolve any conflicts in the evidence.  *State v. Pike*, 113 Ariz. 511, 514 (1976) (jury resolves conflicts and weighs witness credibility); *State v. Cid*, 181 Ariz. 496, 500 (App. 1995) (jury weighs evidence).

¶20        This case is similar to *State v. Carter*, in which our supreme court affirmed a burglary conviction based solely on fingerprint evidence linking the defendant to the scene of the burglary.  118 Ariz. 562, 563 (1978).  Like Petersen, Carter argued there was "no evidence to show the length of time which the print has been on the window." *Id.*   The court determined the evidence was sufficient:

> the evidence showed that the fingerprints of defendant were not found in a place and under circumstances where they could have been reasonably made at a time other than the time of the commission of the offense.  It is well established in our state that a crime may be proven by circumstantial evidence alone, and that fingerprints are a means of positive identification by which a defendant may be linked with the commission of the offense.

*Id.* (quoting *State v. Brady*, 2 Ariz. App. 210, 213 (1965)).

**¶21** In addition, the law governing burglary does not explicitly require proof that a victim owned an allegedly stolen item. Even if it did, here MO testified that he owned a gun that had been stolen during the instant burglary. This is evidence of MO's ownership. *See Gonzales v. City of Phoenix*, 203 Ariz. 152, 156, ¶ 16 (2002) ("In considering whether sufficient proof exists to support a jury verdict, an appellate court looks to the broad scope of the trial and does not re-weigh the evidence on review."). The evidence is sufficient to support the jury conclusion that Petersen is guilty of first degree burglary.

## II. Sentencing

**¶22** Although Petersen's sentence was enhanced by the existence of two historical felonies, and he was sentenced as a category 3 repetitive offender for the class 2 felony, the court did not sentence him to an aggravated sentence, but rather a slightly mitigated sentence. This is so even though the jury found aggravating factors. The mitigated sentence the court imposed reflects that it considered the factors and agreed with Petersen that the mitigating circumstances outweighed the aggravating circumstances.

**¶23** Because the evidence is sufficient to support a conviction for first degree burglary and a mitigated sentence, there is no error, as Petersen claims, of an excessive sentence.

## III. Prosecutorial misconduct for failing to earlier disclose evidence of a prior burglary

**¶24** After empanelment of the jury, the State informed Petersen and the court of a prior burglary at MO's house which occurred "a couple months prior" to the instant offense. The State said that in a conversation with MO regarding how he knew which items were stolen, MO informed the State that he had just repurchased and replaced the items after the earlier burglary. Counsel and the court discussed the potential effect, if any, of making the jurors aware of a prior burglary, including whether to instruct MO to not mention it or to only permit sanitized information (i.e. just that unknown people broke in). There was some concern that evidence of a prior burglary might suggest Petersen may have burglarized the home before the charged offense. The court "want[ed] to make sure that [Petersen] has a right to explore [the prior burglary] if he wants to." The court directed the State to find out whether there was a police report for the earlier burglary and stated "if he made an insurance claim, I would imagine he would have had to have a police report."

¶25 At the recess, counsel and the court reaffirmed that the State was to provide the defense information regarding when other burglaries occurred, the investigating agency, the point of entry into the home, what items were stolen, and if any arrests were made. The next day of trial, Petersen's counsel reported the defense received a police report that morning and stated: "after having the weekend to think about this, I would just ask that there not be any mention of that prior burglary during this trial. For the reasons that were already discussed, it's not relevant and I certainly think that the implication would be that Mr. Petersen had something to do with it, so ask that it not be brought up." MO was instructed to not talk about the prior burglary during his testimony, but told that if asked how he knows the items were or were not taken in the earlier burglary, he may state that he knows because there was a previous burglary, but nothing beyond that. MO was never asked this question during testimony and the prior burglary was not mentioned.

¶26 Petersen argues that a lesser degree of burglary would have been charged if the prosecutor had earlier disclosed that MO's home had previously been burglarized and items were stolen. Petersen claims he should have been charged only with third degree burglary. *See supra* note 6.

¶27 We disagree. First, even if the prior burglary would have been disclosed earlier *and* established the gun had been stolen in the earlier burglary, it may not have affected charging Petersen, but only whether there was evidence to support a conviction. In that case, the deadly weapon element could not have been proven. *See generally* ¶ 17. However, the evidence was undisputed that the gun was stolen in this burglary.

¶28 Second, the late disclosure cannot be said to rise to the level of prosecutorial misconduct because it did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also State v. Benson*, 232 Ariz. 452, 463, ¶ 40 (2013) ("We will reverse a conviction for prosecutorial misconduct only if (1) the prosecutor committed misconduct and (2) a reasonable likelihood exists that the prosecutor's misconduct could have affected the verdict."); *State v. Newell*, 212 Ariz. 389, 402, ¶ 61 (2006) ("To warrant reversal, the prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial.") (internal quotation marks and citations omitted)).

## IV.  Court's denial of Petersen's motion for insurance claim information

**¶29**        Petersen argues he "had a right to secure evidence critical to his defense" and that the court committed error by denying his motion to get insurance information related to any claims MO made.  We disagree. First, the motion Petersen filed regarding insurance claims that the court denied pertained only to an insurance claim filed in response to the instant burglary.  It did not include or contemplate earlier insurance claim information because the fact of a prior burglary was not known until after the court denied Petersen's motion.  Petersen never re-urged his motion for information related to MO's insurance claim for the instant burglary, much less make a motion for insurance claim information for the earlier burglary. *See supra* note 2.

**¶30**        Second, Petersen does not explain how information related to an insurance claim made for the instant offense was "critical" to his defense. Even assuming that the insurance claim information from the instant burglary showed MO did not make a claim for the gun, that fact does not exculpate Petersen, but rather merely establishes that MO did not make an insurance claim for the gun.  Petersen cannot show he was prejudiced by the denial of his motion for insurance claim information related to the instant burglary.

## CONCLUSION

**¶31**        We have reviewed the record for fundamental error and have found none.  The proceedings complied with the Arizona Rules of Criminal Procedure, Petersen and his attorney were present, and Petersen was given an opportunity to speak at sentencing.  The evidence supports the verdict, and the sentence imposed was within the enhanced sentencing range applicable to Petersen's offense.  Thus, we affirm Petersen's conviction and sentence.

**¶32**        Upon the filing of this decision, counsel shall inform Petersen of the status of the appeal and his future appellate options. Defense counsel has no further obligations unless, upon review, counsel finds an issue

appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Petersen shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama