NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

LOUIS ANTHONY RODRIGUEZ, JR., *Appellant*.

No. 1 CA-CR 14-0300
FILED 10-20-2015

---

Appeal from the Superior Court in Maricopa County
No.  CR2013-000569-002
The Honorable Margaret R. Mahoney, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

DeBrigida Law Offices, PLLC, Glendale
By Ronald M. DeBrigida, Jr.
*Counsel for Appellant*

Louis Anthony Rodriguez, Jr.
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

**¶1**         This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969).  Counsel for Defendant Louis Anthony Rodriguez, Jr., has advised us that after searching the entire record he has been unable to discover any arguable questions of law, and has filed a brief requesting us to conduct an *Anders* review of the record. Rodriguez took the opportunity and filed a supplemental brief.  For the following reasons, we affirm.

**FACTS**[1]

**¶2**         Rodriguez was released from the hospital after shooting himself in the leg.  His ex-girlfriend, T.B., agreed to, and gave him a ride home.  At his house, Rodriguez gathered his belongings, got back in the car and, hoping T.B. would help him, explained that he did not know where to go.  Given their former abusive history, T.B. was unwilling to take him to her house.  Instead, she headed to her aunt's house hoping that Aunt W.B. might help.   After explaining the situation, W.B. gave Rodriguez permission to stay at her house until he recovered.

**¶3**         The next evening T.B. went to check on Rodriguez.  Although he was not there, W.B. was at the home with J.W., her housemate.  Just as J.W. and his girlfriend were leaving, Rodriguez arrived and started yelling at everyone.  Once outside, J.W.'s girlfriend called 9-1-1 after J.W. said he saw Rodriguez pull out a gun.

**¶4**         T.B. tried to leave, but Rodriguez pulled out a gun and told her she was not going anywhere.  He ordered W.B. to lock the door, told the two women to sit down and, while brandishing the gun, yelled that he was going to hell and was going to take them with him.

---

[1] We view the facts "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant."  *State v. Rienhardt*, 190 Ariz. 579, 588-89, 951 P.2d 454, 463-64 (1997).

¶5         When Rodriguez heard the police arrive, and without any prompting, he laid down on the floor and slid the gun over to T.B. saying, "That's not mine." After T.B. responded "It ain't mine either," Rodriguez picked up the gun and hid it in a crate before lying back down. And then, obeying police commands, W.B. unlocked the door and went outside, followed by T.B., and a few minutes later, by Rodriguez.

¶6         Rodriguez was arrested. The police interviewed W.B. and T.B., although she was reluctant. As a result, the police secured a warrant to search the house and found the gun where Rodriguez had placed it. They also discovered two bags stacked near each other in the living room. The larger bag contained fifteen rounds of .45 caliber ammunition and a picture depicting Rodriguez wearing red, with the label "ESML," the acronym for East Side Mesa Locos, a street gang. The second, smaller, bag, contained letters addressed to Rodriguez, and more pictures, one listing the names of several ESML members, and another showing six individuals, several of whom were displaying ESML gang signs.

¶7         Rodriguez was subsequently indicted for two counts of kidnapping, two counts of aggravated assault, disorderly conduct, misconduct involving weapons, and threatening or intimidating. The charges were dismissed without prejudice after the State secured a new indictment against Rodriguez for the original charges, as well as assisting a criminal street gang, influencing a witness, and conspiracy to commit influencing a witness. The new indictment also named Marguerite Baker, an ESML gang member, as a co-defendant on the three new charges.[2]

¶8         The three additional charges were included after T.B. reported that she received postcards in the mail with threatening messages, and a visit from Baker. T.B. recognized Rodriguez's handwriting on one of the postcards which warned her:

> Pay attention real close. *You are to not show up at any court.* Also you are held responsible for your aunt and cousin and his bitch. *None are to come or you will be seen and you will get got* no games. Make damn sure nobody shows and no worries. *If one shows you pay for it.* Be smart. Don't show this to anyone. Be smart. Throw this away and stay away: period.

---

[2] Baker subsequently entered into a plea agreement with the State and testified against Rodriguez.

(Emphasis added.)  Additionally, Baker stopped to visit T.B. at Rodriguez's bequest, and questioned T.B. about the evening of April 25, 2012, and the court case.

¶9	Before trial, the State amended the indictment by dismissing all charges except the two kidnapping charges, aggravated assault charges, misconduct involving weapons, assisting a criminal street gang, and conspiracy to intimidate a witness charges.  The case went to trial, and after the presentation of the evidence, closing arguments and jury instructions, the jury convicted Rodriguez of misconduct involving weapons, assisting a criminal street gang, and conspiracy to commit influencing a witness, but were unable to reach a verdict on the remaining counts.[3]  The jury then had to decide whether the § 13-714 enhancement applied, and found beyond a reasonable doubt that the conviction of assisting a criminal street gang was a gang offense pursuant to Arizona Revised Statutes ("A.R.S.") section 13-714.[4]  Rodriguez was subsequently sentenced to mitigated concurrent terms of twelve-and-a-half years for assisting a criminal street gang, six years for misconduct involving a weapon, and three years for the conspiracy conviction.  He was given 738 days of presentence incarceration credit.

¶10	We have jurisdiction over this appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶11	In his supplemental brief, Rodriguez raises the following issues: (1) there was insufficient evidence to convict him on the gang and conspiracy charges; (2) applying the § 13-714 enhancement to the assisting a criminal street gang charge was a sentencing error; and (3) the court abused its discretion by (a) denying his motion to dismiss the charges for speedy trial violations under Arizona Rules of Criminal Procedure ("Rule") 8 and the Sixth Amendment, as well as denying his motions to dismiss for vindictive prosecution, and for a due process violation, (b) permitting Exhibit 212, the jail tape, to be played to the jury in its entirety even though it referred to a previous incarceration, (c) permitting the State to ask Baker

---

[3] The jury was hung on the two kidnapping and aggravated assault charges. The State successfully asked that those charges be dismissed without prejudice.
[4] We cite the current version of the applicable statute unless otherwise noted.

leading questions during direct examination, and (d) dismissing the first case.

**¶12**      In reviewing the issues on appeal, if Rodriguez objected at trial, we will review whether the court abused its discretion or otherwise erred, and if we find such, whether that abuse is harmless error. *See State v. Valverde*, 220 Ariz. 582, 585, ¶ 11, 208 P.3d 233, 236 (2009) (citing *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005)). As a result, even if there is some error, we will affirm a conviction if the evidence demonstrates beyond a reasonable doubt that the error did not contribute to or affect the verdict. *Valverde*, 220 Ariz. at 585, ¶ 11, 208 P.3d at 236 (citing *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (internal quotation marks omitted)). If, however, Rodriguez did not object at trial, we only review for fundamental prejudicial error. *Valverde*, 220 Ariz. at 585, ¶ 12, 208 P.3d at 236; *Henderson*, 210 Ariz. at 567, ¶¶ 19-20, 115 P.3d at 607.

## I.      Sufficiency of the Evidence

**¶13**      Rodriguez first argues that the State failed to present sufficient evidence to support his convictions on the gang and conspiracy charges. The trial court denied Rodriguez's Rule 20 motion. We review the Rule 20 ruling for an abuse of discretion. *State v. McCurdy*, 216 Ariz. 567, 573, ¶ 14, 169 P.3d 931, 937 (App. 2007) (citing *State v. Hollenback*, 212 Ariz. 12, 14, ¶ 3, 126 P.3d 159, 161 (App. 2005)). We will only reverse a conviction for insufficient evidence if there is "no substantial evidence to support the jury's verdict." *State v. Scott*, 187 Ariz. 474, 477, 930 P.2d 551, 554 (App. 1996) (citing *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983)). Substantial evidence is "more than a mere scintilla" of evidence, and is evidence that "reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (internal citations and quotation marks omitted). It is the role of the fact finder, and not this court, to weigh the evidence and determine the credibility of witnesses. *See State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987) (citation omitted).

**¶14**      The jury heard substantial evidence supporting its verdicts convicting Rodriguez for assisting a criminal street gang and conspiracy to intimidate a witness. The evidence demonstrated that Rodriguez sought to

use his status as a gang member to attempt to prevent T.B. from cooperating with the police or testifying at trial – he sent her postcards suggesting there would be negative repercussions if she testified, and conspired with Baker, another gang member, to visit T.B. in order to attempt to influence her not to cooperate. And, there is substantial evidence documenting Rodriguez's ESML gang membership, as well as the benefits to the gang if he were released from jail before trial. For example, Detective Staab testified that the ESML gang engaged in illegal activities to earn money, Rodriguez could only help the gang if he was not in custody, and his attempt to use Baker to help him get out of jail would benefit the gang because he would be obligated to help other gang members. There was, as a result, sufficient evidence that Rodriguez had assisted a criminal street gang to send the case to the jury and for the jury to find him guilty beyond a reasonable doubt on that charge.

¶15        And there was substantial evidence of the conspiracy charge. While in jail, Rodriguez called Baker three times and those calls were recorded and played to the jury.[5] In Rodriguez's first call to Baker, the following conversation occurred:

> Baker: . . . Don't even trip, me and Joey are on top of this shit . . . . Me 'n' Joey are about to go get the police report and shit to find out like who all wrote stuff, you know what I mean. . . .
>
>    ***
> Rodriguez: Be on this for me, alright.
>
> Baker: Hey, believe me we're on this dog.
>
>    ***
> Rodriguez: Yeah, I don't know but I'm on my real number right here, so *you know what I mean, so I ain't saying to do nothing, but if you can, look into it*.

(Emphasis added.)

---

[5] The Maricopa County Jail, operated by the Sheriff's Office, records all outward-bound jail calls.

¶16        During the second phone call,[6] Rodriguez asked Baker what T.B. had said, and also asked "you gonna beat her down or what?"  When Baker claimed that she had beaten up T.B., Rodriguez laughing, told her "Hell yeah."  And during the third recorded conversation, Rodriguez asked Baker to visit T.B. and W.B. to get them to sign affidavits exculpating him, which she asserted she did.

¶17        Although Rodriguez argues that Baker was unreliable and not credible, the jury had to weigh her credibility and decide whether her testimony was truthful and we will not re-weigh the evidence to determine her credibility.  *Cid*, 181 Ariz. at 500, 892 P.2d at 220.  The record, as a result, demonstrates that there was substantial evidence to support the court's denial of the Rule 20 motion and the jury's verdict that Rodriguez was guilty beyond a reasonable doubt of conspiracy to commit influencing a witness.  Consequently, we find no error in his convictions on the challenged verdicts.

## II.    The Sentencing Enhancement

¶18        Rodriguez next argues that the trial court misinterpreted the Arizona statute when it applied the § 13-714 enhancement to his assisting a criminal street gang conviction, and violated his rights against double jeopardy.  We review the claim for fundamental error, but review issues of statutory interpretation de novo.  *State v. Ross*, 214 Ariz. 280, 283, ¶ 21, 151 P.3d 1261, 1264 (App. 2007) (citing *State v. Gallagher,* 205 Ariz. 267, 269, ¶ 5, 69 P.3d 38, 40 (App. 2003)).

¶19        Both the United States Supreme Court and Arizona Supreme Court have found that sentence enhancements do not violate double jeopardy.  *State v. Harm*, 236 Ariz. 402, 408, ¶ 23, 340 P.3d 1110, 1116 (App. 2015) (citing *United States v. Watts*, 519 U.S. 148, 154–55 (1997)); *State v. Bly*, 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980), *superseded by statute,* A.R.S. § 13–702, *as recognized in State v. Pitts,* 178 Ariz. 59, 63, 870 P.2d 1155, 1159 (App. 1993).[7]  As a result, the fact that § 13-714 was used as an enhancement does not violate the doctrine of double jeopardy.

---

[6] Rodriguez used his booking information to make the first call, but attempted to use another person's information to make the second and third calls to Baker.

[7] Although A.R.S. § 13-702 (now A.R.S. § 13-701, *see* 2008 Ariz. Sess. Laws, ch. 301, § 23 (2nd Reg. Sess.)) has since been amended, the *Bly* analysis and

¶20         Section 13-714 provides that when a defendant is convicted of committing "any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang," then the "presumptive, minimum and maximum sentence for the offense shall be increased by three years if the offense is a class 4, 5 or 6 felony or . . . by five years if the offense is a class 2 or 3 felony."  A.R.S. § 13-714.  As a result, Rodriguez contends that because the preparatory offense for assisting a criminal street gang was the class five felony of conspiracy to commit influencing a witness, the § 13-714 enhancement should only attach to the class five felony and not the class three felony of assisting a criminal street gang.  We disagree.

¶21         Although it can be argued that the preparatory felony offense for assisting the criminal street gang was the conspiracy to commit influencing a witness, Rodriguez was convicted of both conspiracy and assisting a criminal street gang, and the statute does not preclude the § 13-714 enhancer from attaching to the conviction for assisting a criminal street gang regardless of any alleged preparatory felony.  Although Rodriguez disagrees with the State's decision to seek the enhancer on the class three felony, he has cited no statutory or case law that prohibits the enhancer from attaching to the class three felony, and we have found none.  Moreover, after finding Rodriguez guilty of assisting a criminal street gang, the jury, after hearing further argument from the State and defense counsel, found the criminal street gang conviction was a gang offense beyond a reasonable doubt and the court properly considered it when sentencing Rodriguez.  *See State v. Snyder*, 111 Ariz. 366, 367, 529 P.2d 1183, 1184 (1975) ("The rule of law is well established that where, as here, a sentence is clearly within the statutory limits provided for the offense, a reviewing court will not disturb the sentence unless there is a clear abuse of discretion."); *see also Harm*, 236 Ariz. 402, 340 P.3d 1110 (affirming defendant's conviction and sentence where § 13-714 enhancer applied to class three felony).  Consequently, we find no sentencing error.

## III.    Trial Court's Rulings

### A. Denial of Speedy Trial Violation Motion

¶22         Rodriguez sought to dismiss the case for speedy trial violations under the Sixth Amendment and Rule 8.  The Sixth Amendment

---

deference to the legislature in determining statutory sentencing schemes is still applicable.  *Harm*, 236 Ariz. at 408 n.5, ¶ 23, 340 P.3d at 1116 n.5.

to the United States Constitution guarantees the right to a speedy and public trial in all criminal prosecutions. U.S. Const. amend. VI. The United States Constitution does not require that a trial be held within a specified time period. U.S. Const. amend. VI; *State v. Spreitz,* 190 Ariz. 129, 139, 945 P.2d 1260, 1270 (1997). As a result, we examine four factors to determine whether a constitutional speedy trial right was violated; namely, (1) the length of the delay; (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) the prejudice caused to the defendant. *State v. Soto,* 117 Ariz. 345, 348, 572 P.2d 1183, 1186 (1977) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The most important of the four factors is the prejudice caused to the defendant, while the least important is the length of the delay. *See Fuller v. Olson ex rel. Cty. of Pinal*, 233 Ariz. 468, 472-73, ¶ 10, 314 P.3d 814, 818-19 (App. 2013) (citations omitted).

**¶23** Rule 8 has "even stricter speedy trial rights than those provided by the United States Constitution." *Spreitz*, 190 Ariz. at 136, 945 P.2d at 1267 (internal citations and quotation marks omitted). Under Rule 8.2(a)(1), a defendant in custody must be tried within 150 days after arraignment. Some of the delays, however, can be excluded from the 150 day calculation under Rules 8.4 and 8.5. We review the court's Rule 8 ruling but will not reverse it unless a defendant shows that the court "abused its discretion *and* that prejudice resulted." *Spreitz,* 190 Ariz. at 136, 945 P.2d at 1267 (emphasis added).

**¶24** After Rodriguez was arraigned after the first indictment, both sides filed successful motions to continue under Rule 8.5. The case was dismissed on February 24, 2013, without prejudice before 150 days elapsed.

**¶25** Rodriguez, however, was arraigned under the new indictment on February 21, 2013, and the Rule 8 time limits started anew. *See State ex rel. Berger v. Superior Court*, 111 Ariz. 524, 534 P.2d 266 (1975); *Earl v. Garcia ex rel. Cty. of Maricopa*, 234 Ariz. 577, 581, ¶ 20, 324 P.3d 863, 867 (App. 2014). Again, both Rodriguez and the State successfully requested continuances. The court properly excluded the continuance time from the 150 day calculation pursuant to Rule 8.4 by finding the delay was "indispensable to the interests of justice," and not merely for "delay or any improper purpose." The court, as a result, did not abuse its discretion in granting the continuances, and did not violate Rule 8.

**¶26** Moreover, the delays did not prejudice Rodriguez. Although he alleges prejudice because he experienced "excessive pretrial incarceration, stress, anxiety, mental anguish and hardship," and that but

for the dismissal and re-indictment, the State would have had insufficient time to obtain the DNA evidence linking him to the gun, he waived the argument by not making it to the trial court. *See State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). He caused some of the delay by trying to intimidate T.B., which led to the new indictment with additional charges. And despite any stress or anxiety, Rodriguez had the opportunity to fully investigate his case, adequately prepare for trial, and he did not lose the opportunity to present any evidence or testimony. *See State v. Wassenaar*, 215 Ariz. 565, 572, ¶ 20, 161 P.3d 608, 615 (App. 2007). Consequently, because Rodriguez was tried within the statutory time limits and was not prejudiced by any delay, there was no abuse of discretion and no prejudice warranting reversal of his convictions whether under the federal constitution or Rule 8.

## B. Denial of Vindictive Prosecution Motion

**¶27** Rodriguez also argues that the trial court abused its discretion by denying his motions to dismiss for vindictive prosecution, and a due process violation. He contends that the State was vindictive by dismissing the original indictment without prejudice and securing the new indictment with additional charges after he requested the court to keep the case moving to trial. We disagree.

**¶28** We review the court's ruling on the motion to dismiss for vindictive prosecution for an abuse of discretion. *See State v. Mieg*, 225 Ariz. 445, 447, ¶ 9, 239 P.3d 1258, 1260 (App. 2010); *State v. Brun*, 190 Ariz. 505, 506, 950 P.2d 164, 165 (App. 1997). A court abuses its discretion when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *Mieg*, 225 Ariz. at 447, 239 P.3d at 1260 (quoting *State v. Chapple,* 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983)) (quotation marks omitted).

**¶29** The State cannot punish a defendant who chooses to exercise his constitutional rights by prosecutorial decisions that are "motivated by a desire to punish him for doing something that the law plainly allowed him to do." *United States v. Goodwin*, 457 U.S. 368, 384 (1982). However, because a defendant is expected to invoke procedural rights before trial that would inevitably burden the prosecutor in some way, it is "unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.* at 381. Thus, the time at which a change in the charging decision is made is relevant because a "change in the charging decision

made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id.*

¶30  Rodriguez argues that the State's decision to seek a new indictment and then dismiss the first indictment without prejudice was vindictive. The court, however, found that the State's decision was not vindictive because the new charges stemmed not from his original alleged behavior, but from his conduct to prevent T.B. from cooperating after the original indictment, and not his desire to be tried quickly. As a result, the court denied his motion. Consequently, the court did not abuse its discretion by dismissing Rodriguez's vindictive prosecution motion.

## C. Admission of Jail Call Recordings

¶31  Rodriguez also contends that the trial court abused its discretion by permitting the recorded jail telephone conversation, which referred to his prior conviction, to be admitted into evidence and played in its entirety. We review the court's rulings on evidentiary issues for an abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60, 84 P.3d 456, 473 (2004) (citing *State v. Gulbrandson*, 184 Ariz. 46, 60, 906 P.2d 579, 593 (1995).

¶32  Rodriguez filed a motion in limine to preclude testimony about the nature of his prior felony convictions. Although there is no indication in the record that the court ruled on the motion before trial, Rodriguez's lawyer agreed that the non-redacted jail recording could be played in its entirety. The recording was admitted into evidence without objection and it was played for the jury. During the recording the following statements were heard:

> Rodriguez:  My Mom didn't know?

> Baker:  No I told your Mom.

> Rodriguez:  F*** dude

> Baker:  Because she said um "well G***d***," she like, "he just got out for f*****g kidnapping. Did he really do that to somebody Marguerite?"

¶33  Subsequently, the defense raised some concern that the statement in the recording could have suggested that Rodriguez had a prior conviction and asked for it to be redacted. Because the recording had been admitted into evidence and played to the jury, and it was not clear whether

the recording specifically referred to any prior convictions, the court denied the redaction request. However, the court gave the defense the opportunity to recall the witness if there was a need to clarify the issue. The defense did not ask that any witness be recalled to clarify the issue.

**¶34**        Even if the portion of the recorded conversation somehow involves a discussion of a prior felony conviction, it was clear that the kidnapping was discussed, but the jury could not unanimously agree that the State proved either kidnapping charge beyond a reasonable doubt. Consequently, because the defense agreed that the tape could be admitted and played, and did not object when it was offered into evidence, we find no error, much less fundamental prejudicial error.

**D.  Asking a State's Witness Leading Questions**

**¶35**        Rodriguez argues that the court abused its discretion by permitting the State to ask Baker leading questions during direct examination. Because there was no objection at trial, we review the argument for fundamental prejudicial error. *See Valverde*, 220 Ariz. at 585, ¶ 12, 208 P.3d at 236; *Henderson*, 210 Ariz. at 567, ¶¶ 19-20, 115 P.3d at 607.

**¶36**        Although leading questions are generally prohibited on direct examination, the general prohibition is not absolute, and a trial court may, at its discretion, allow a party to ask leading questions of its own witness. *State v. Duffy*, 124 Ariz. 267, 273-74, 603 P.2d 538, 544-45 (App. 1979). Here, the defense was concerned that Baker might discuss Rodriguez's prior bad acts, and consented to the State asking Baker leading questions. Therefore, the court did not err, much less commit fundamental prejudicial error, by permitting the prosecutor to ask Baker leading questions.

**E.  Dismissal of First Case Without Prejudice**

**¶37**        Rodriguez's final argument is that the trial court abused its discretion by dismissing the original case. The record on appeal does not include the proceedings relating to the dismissal of the first case without prejudice. When the record on appeal is incomplete, we presume that the missing portion of the record supports the trial court's decision. *See State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982); *State v. Printz*, 125 Ariz. 300, 304, 609 P.2d 570, 574 (1980).

**¶38**        Although we do not have the record of the first indictment and the subsequent trial proceedings, the new indictment added a

co-defendant and additional charges. Because there was a factual basis for the new indictment, the court complied with Rule 16.6 by dismissing the original case after the new indictment. Consequently, we find no error.

## IV.    Reversible Error Review

**¶39**        We have read and considered the opening brief and Rodriguez's supplemental brief. We have searched the entire record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We fine none.

**¶40**        All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The record reveals that although Rodriguez filed a number of pro per motions, he was represented by counsel at all stages of the proceedings, including the settlement conference. And as a result of the evidence and counsel's efforts, the jury was unable to unanimously agree on a verdict to convict him on four (two counts of kidnapping and aggravated assault) of the seven counts and those were dismissed without prejudice. Rodriguez was sentenced within the statutory guidelines and received mitigated, concurrent sentences.

**¶41**        After this decision is filed, counsel's obligation to represent Rodriguez in this appeal has ended. Counsel must only inform Rodriguez of the status of the appeal and Rodriguez's future options, unless counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Rodriguez may, if desired, file a motion for reconsideration or petition for review pursuant to the Arizona Rules of Criminal Procedure.

## CONCLUSION

**¶42**        Accordingly, we affirm Rodriguez's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama