IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**JOHN LOGAN BROWN,**
*Appellant.*

———————

No. CR-24-0143-PR
Filed October 7, 2025

———————

Appeal from the Superior Court in Pima County
The Honorable Brenden J. Griffin, Judge
No. CR20220381-001
**REVERSED AND REMANDED**

Memorandum of the Court of Appeals, Division Two
No. 2 CA-CR 23-0138
**VACATED IN PART, AFFIRMED IN PART**

———————

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Alice M. Jones, Deputy Solicitor General, Section Chief of Criminal Appeals, Casey D. Ball (argued), Amy M. Thorson, Assistant Attorneys General, Phoenix, Attorneys for State of Arizona

James L. Fullin, Pima County Legal Defender, Alex D. Heveri (argued), Assistant Legal Defender, Tucson, Attorneys for John Logan Brown

Jared G. Keenan (argued), Attorney at Law, American Civil Liberties Union Foundation of Arizona, Phoenix, Attorney for Amici Curiae The American Civil Liberties Union of Arizona & Arizona Attorneys for Criminal Justice

JUSTICE BEENE authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, MONTGOMERY, KING and BERCH (Retired)* joined. CHIEF JUSTICE TIMMER dissented.

JUSTICE BEENE, Opinion of the Court:

**¶1** John Brown was charged with three counts of aggravated assault. At trial, Brown asserted that he acted in self-defense and requested several justification jury instructions. The superior court denied Brown's request that it instruct the jury on the defense of residential structure, A.R.S. § 13-418; the defense of premises, A.R.S. § 13-407; and the presumption that applies to these defenses, A.R.S. § 13-419.

**¶2** In this case, we determine whether a bedroom within a condominium constitutes a "residential structure." We also consider the scope and application of a justification statute that presumes an individual lawfully uses force when defending against an unlawful entry into a residential structure.

**¶3** After oral argument before this Court, we issued a decision order finding that the superior court erred in denying Brown's requested instructions. We also indicated that this Opinion fully explaining our decision would follow.

## BACKGROUND

**¶4** At the time relevant to the events in this case, Brown lived with J.A., his long-term partner, and their two minor children in a two-bedroom condominium. Although Brown considered J.A. his wife, they lived in separate rooms.

**¶5** Brown and J.A. met M.H., the victim, in 2020. M.H. was their neighbor but also occasionally lived with the couple. About a year before the incident leading to Brown's charges, Brown told J.A. that he was

---

* Justice Maria Elena Cruz recused herself from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Justice Rebecca Berch (Ret.) was designated to sit in this matter.

"uncomfortable" with M.H. and that he no longer wanted him at their condominium or around their children. Brown's concerns about M.H. stemmed from an altercation between M.H. and other mutual friends. Brown was also aware that M.H. had a felony conviction for using a knife against a former roommate. Despite Brown's apprehension about M.H., J.A. continued to maintain a friendship with him.

¶6   In December 2021, Brown and J.A. separated, and he moved out. A month later, after M.H. told J.A. that he did not want her to reconcile with Brown, the two men got into a fight during which M.H. assaulted Brown and broke one of his guitars. Shortly after the fight, Brown moved back in with J.A., and they agreed that M.H. would not return to their condominium.

¶7   However, one week later, J.A. invited M.H. over to help her clean the condominium after Brown left for work. Although Brown knew that M.H. was coming over, he "wasn't happy about it." After returning from work and noticing that M.H. was still in the condominium, Brown locked himself in his bedroom. Brown then texted J.A. to "leave him alone for the evening."

¶8   Defying this request, J.A. attempted to unlock the door to Brown's bedroom. When that effort failed, J.A. forced the door open, but Brown quickly shut it, telling J.A. that he did not want to talk to her. Undeterred, J.A. forced the door open again. After seeing J.A. and M.H. standing in the doorway to his bedroom, and not knowing who forcibly opened his bedroom door, Brown picked up a microphone stand and began swinging it around to prevent them from coming into his bedroom. Brown and M.H. fought over the microphone stand and during this altercation, M.H. was struck in the face.

¶9   A grand jury indicted Brown on three counts of aggravated assault. One count was based on his actions involving the microphone stand. The two other counts involved conduct that occurred later. The jury found Brown guilty only of the count involving the microphone stand. The trial court sentenced Brown to five years in prison.

¶10   The court of appeals affirmed the conviction and sentence. *State v. Brown*, No. 2 CA-CR 2023-0138, 2024 WL 2263468, at *1 ¶ 1 (Ariz. App. May 17, 2024) (mem. decision). The court rejected Brown's argument that the trial court erred by failing to instruct the jury on defense of

premises, § 13-407; defense of residential structure, § 13-418; and the presumption related to those defenses, § 13-419(A). *Id.* at *2–3 ¶¶ 12–16.

**¶11**　　　The court began its analysis with § 13-419(A), a statute that "would render Brown's conduct presumptively necessary if he knew or reasonably believed that M.H. was unlawfully entering—or had unlawfully entered—Brown's residential structure." *Id.* at *3 ¶ 17. Although the court noted that M.H. must have been in Brown's residential structure unlawfully and without "the right to be in" the structure for § 13-419's presumption to apply, the court determined that it did not need to decide whether Brown's locked room qualified as a "residential structure." *Id.* at *3 ¶¶ 17–18. Thus, the court assumed, without deciding, that Brown's bedroom constituted a "residential structure." *Id.* at *3 ¶ 18.

**¶12**　　　The court then addressed whether M.H. had the "right to be in" the property as an "invitee." *Id.* at *3 ¶ 19; § 13-419(C)(1). It concluded that because J.A. had invited M.H. to the condominium and did not ask him to leave before the incident, "even if the bedroom was a distinct residential structure, the record suggests no legal limitations on J.A.'s ability to . . . allow M.H. to enter it." *Id.* at *4 ¶ 20. Accordingly, the court held that § 13-419's presumption was not available to Brown because M.H.'s entry into Brown's bedroom was lawful. *Id.* at *4 ¶ 21.

**¶13**　　　After determining that the presumption instruction was not applicable, the court then discussed whether Brown was nonetheless entitled to an instruction on the defense of premises and the defense of a residential structure. *Id.* at *4 ¶¶ 22–23; §§ 13-407(A), -418(A).

**¶14**　　　Regarding the defense of premises instruction, the court reasoned that "Brown could not have reasonably believed that force was 'immediately necessary to prevent or terminate a . . . criminal trespass'" because "[a] 'criminal trespass' requires that the defendant 'knowingly enter[]' or 'remain[] unlawfully on a property.'" *Brown*, 2024 WL 2263468, at *4 ¶ 22 (alterations in original) (first quoting § 13-407(A), then quoting A.R.S. §§ 13-1502 to -1504). The court concluded that because Brown knew that J.A. had invited M.H. to the condominium, no trespass was possible, and the trial court therefore did not abuse its discretion in denying Brown's request for this instruction. *Id.*

**¶15**　　　The court of appeals similarly concluded that the trial court did not abuse its discretion in declining to give the defense of residential structure instruction. *Id.* at *4 ¶ 23. The court also determined that, because

Brown could not have reasonably believed M.H. was "unlawfully or forcefully entering" the property and no evidence suggested that Brown "reasonably believe[d]" he was "in imminent peril of death or serious physical injury," this instruction was not warranted. *Id.*

¶16 We granted review because the issues presented in this case are of statewide importance and capable of repetition. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶17 "We review a trial court's decision to give a jury instruction for an abuse of discretion." *State v. Ewer*, 254 Ariz. 326, 329 ¶ 10 (2023) (quoting *State v. Aragón*, 252 Ariz. 525, 528 ¶ 6 (2022)). "An abuse of discretion occurs when a court commits a legal error by misinterpreting or misapplying the law." *Voice of Surprise v. Hall*, 255 Ariz. 510, 513 ¶ 11 (2023). But the trial court has discretion over whether to give or refuse an instruction, and we will not upset that decision "absent a clear abuse of that discretion." *State v. Bolton*, 182 Ariz. 290, 309 (1995).

¶18 We review de novo whether a trial court properly instructed the jury. *State v. Champagne*, 247 Ariz. 116, 130 ¶ 22 (2019). "A defendant is entitled to a self-defense instruction if the record contains the 'slightest evidence' that he acted in self-defense." *State v. King*, 225 Ariz. 87, 90 ¶ 14 (2010) (quoting *State v. Lujan*, 136 Ariz. 102, 104 (1983)).

### II.

¶19 As indicated above, the trial court declined Brown's request to instruct the jury on the defense of residential structure and the presumption related to that defense. §§ 13-418, -419. Both instructions reference the term "residential structure," which is defined in A.R.S. § 13-1501(11). Determining whether the trial court abused its discretion in declining to instruct the jury regarding these statutes compels us to interpret § 13-1501(11).

¶20 "We interpret statutes 'in view of the entire text, considering the context and related statutes on the same subject.'" *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 15 (2024) (quoting *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019)). Courts will read each word, phrase, clause, and sentence in a manner that ensures "no part of the statute

is void or trivial" and will give meaning to the statute's clear and unequivocal language. *Id*. Under this plain meaning analysis, courts "look first to the language of the provision, [and] if the statutory language is clear, judicial construction is neither required nor proper." *Id*. (quoting *Perini Land & Dev. Co. v. Pima County*, 170 Ariz. 380, 383 (1992)) (citation modified).

**¶21** In Arizona, the statutory definition of a "residential structure" is "any structure, movable or immovable, permanent or temporary, that is adapted for both human residence and lodging whether occupied or not." § 13-1501(11). Section 13-1501(12) then describes a "structure," in part, as "any building . . . or place with sides and a floor that is separately securable from any other structure attached to it and that is used for lodging."

**¶22** These statutes use three important but undefined terms: "human residence," "lodging," and "separately securable." When statutory terms are undefined, "courts generally give words their ordinary meaning and may look to dictionary definitions." *In re Drummond*, 257 Ariz. 15, 18 ¶ 7 (2024). "Residence" is defined as "the place where one actually lives," or "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." *Residence*, Webster's Third New International Dictionary (1976); *Residence*, Black's Law Dictionary (4th ed. 1968) ("A factual place of abode."). Thus, a "human residence" is a "dwelling place, abode, or habitation" that has been adapted for human living. Next, "lodging" has been defined in common language as "a place to live," "a place in which to settle or come to rest," "sleeping accommodations," or "a room or rooms in the house of another used as a place of residence." *Lodging*, Webster's Third New International Dictionary (1976). Finally, "securable" has been defined as "capable of being secured." *Securable*, Webster's Third New International Dictionary (1976). "Secure," in turn, means "to relieve from exposure to danger," or to "make safe." *Secure*, Webster's Third New International Dictionary (1976). Reading these statutes and dictionary definitions together and in the broader statutory context provides that a "residential structure" is: (1) any place with sides and a floor, (2) that is separately securable from any other structure attached to it, and (3) is adapted for both human residence and lodging. The statutory text does not require that a residential structure be completely distinct from any other residential structure, nor does it preclude a residential structure from being nested within another residential structure, as in the case of rooms within a boarding house.

¶23 Under this definition, Brown's bedroom constitutes a residential structure. His bedroom had walls and a floor. It also had a door, capable of being locked, that rendered his bedroom "separately securable" from the "other structure attached to it," i.e., the rest of the condominium. Even if the front door to the common area was left unlocked or visitors were admitted to the common area, Brown's room could still be locked and closed off from unwanted visitors. Furthermore, a bedroom is inherently adapted for both human residence and lodging; it is a living area and, much like a hotel room, is equipped for lodging. The only element distinguishing a "residential structure" under § 13-1501(11) and a "structure" under § 13-1501(12) is that a "residential structure" must be "adapted for both human residence and lodging whether occupied or not." That element is present here given that a bedroom provides "sleeping accommodations" and is a place where one lives. Thus, the plain meaning of § 13-1501(11) and -1501(12) supports our conclusion that Brown's bedroom is a "residential structure."

¶24 Our dissenting colleague takes issue with our conclusion that a residential structure may be nested within another residential structure. *See infra* ¶ 59. The dissent argues that we "largely ignore" the portion of § 13-1501(12) that requires a "structure" to be "separately securable from any other structure attached to it." *See infra* ¶ 60. We disagree.

¶25 Our interpretation of § 13-1501(12) does not overlook the statutory language but rather reads the text and necessary dictionary definitions together, and in context, to reach § 13-1501(12)'s meaning. *See supra* ¶ 22. As previously indicated, a "residential structure" is: (1) any place with sides and a floor, (2) that is separately securable from any other structure attached to it, and (3) is adapted for both human residence and lodging. *Id.* Brown's bedroom meets the definition of a "residential structure" and is "separately securable" on its own from the "other structure attached to it" — the rest of the condominium. The plain meaning of the statute does not require more.

¶26 The dissent also argues that "[a] residence is generally more than a place to sleep," and that a residence "typically includes a kitchen, bathroom, and other living areas that together make the home suitable and comfortable for human occupancy," and concludes that "the entire living space should be considered the 'residential structure.'" *See infra* ¶ 62. Again, we disagree.

¶27        Here, the dissent narrows the definition of "residential structure" by inserting requirements that are absent from the text of the relevant statutes. Specifically, the dissent maintains that "[a] residence is generally more than a place to sleep" and "[o]ther than with student dormitories, hotel rooms, and similar abodes . . . typically includes a kitchen, bathroom, and other living areas that together make the home suitable and comfortable for human occupancy." *See infra* ¶ 62. The dissent's definition of "residential structure" and use of additional qualifying characteristics is internally inconsistent and incompatible with the text of the relevant statutes. A residence may *generally* be more than a place to sleep and may *typically* include amenities such as a kitchen and bathroom, but that is not always so, as is the case with dormitories, hotel rooms, group homes, boarding houses, and similar abodes. More importantly, amenities like "a kitchen, bathroom, and other living areas" are not required by the text of §§ 13-1501(11) and -1501(12). The dissent's emendation to the definition of "residential structure" would effectively rewrite the statute—something we cannot do. *See City of Phoenix v. Butler*, 110 Ariz. 160, 162 (1973) (concluding that "it is not the function of the courts to rewrite statutes"). As noted earlier, we derive a statute's meaning by "determin[ing] the plain meaning of the words the [L]egislature chose to use." *In re Drummond*, 257 Ariz. at 18 ¶ 5. Here, we have faithfully adhered to the plain meaning of the Legislature's words to conclude that Brown's bedroom constituted a "residential structure."

## III.

¶28        Section 13-419(A) provides a presumption that the threat or use of physical force was immediately necessary "if the person knows or has reason to believe that the person against whom physical force . . . is threatened or used is unlawfully or forcefully entering or has unlawfully or forcefully entered and is present in the person's residential structure." Subsection (B) then states that "a person . . . who has unlawfully or forcefully entered and is present in a residential structure . . . is presumed to pose an imminent threat of unlawful deadly harm to any person who is in the residential structure."[1] § 13-419(B). As previously indicated, we conclude that Brown's bedroom comprised a residential structure under Arizona law. *See supra* ¶¶ 21–23.

---

[1] Section 13-419's presumption applies to the justification defenses in §§ 13-407 and -418. *See* §§ 13-419(A), (B).

**¶29** But this presumption does not apply when "[t]he person against whom physical force . . . was threatened or used has the right to be in . . . the residential structure . . . including an owner, lessee, invitee or titleholder." § 13-419(C)(1). Here, the court of appeals concluded that because J.A. invited M.H. into the condominium, his entry into Brown's bedroom was lawful and therefore § 13-419(A)'s presumption did not apply. *Brown*, 2024 WL 2263468, at *4 ¶¶ 20–21. We disagree.

**¶30** The court of appeals relied on *Georgia v. Randolph*, 547 U.S. 103 (2006), for its conclusion that Brown could not "unilaterally exclude J.A.—or her invitee M.H.—from [Brown's] bedroom." *Brown*, 2024 WL 2263468, at *4 ¶¶ 19–20. This is a misreading of *Randolph*.

**¶31** In *Randolph*, the United States Supreme Court considered whether an evidentiary seizure was lawful when one occupant to the premises granted permission to search despite the other occupant's presence and express refusal to consent to the search. 547 U.S. at 106. In analyzing this issue, the Court stated:

> Since the co-tenant wishing to open the door to a third party has *no recognized authority in law or social practice to prevail over a present and objecting co-tenant*, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering that the officer would have in the absence of any consent at all.

*Id.* at 114 (emphasis added). Accordingly, the Court concluded that law enforcement could not lawfully enter and search a shared residence based on the consent of one occupant when the other occupant was also present and contemporaneously objected to the search. *Id.* at 120.

**¶32** The court of appeals' reliance on *Randolph* to support its conclusion that a co-tenant has the authority to prevail over the express wishes of another co-tenant was erroneous. In fact, *Randolph* supports the opposite conclusion—that J.A. had no authority to invite M.H. into Brown's bedroom against his express wishes.

**¶33** Moreover, the court of appeals' error regarding *Randolph*'s holding was heightened when it incorrectly concluded that M.H.'s entry into Brown's bedroom was lawful because he was J.A.'s "invitee." *See Brown*, 2024 WL 2263468, at *3–4 ¶¶ 19–21. Although Brown acknowledged that J.A. was "allowed to invite people over," an invitee can become a

trespasser if that individual exceeds the scope of the invitation. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 143 (1982). It is uncontroverted that Brown did not invite M.H. into his bedroom; thus, M.H. was not an "invitee" for this purpose and had no "right to be in" Brown's bedroom.

¶34 In sum, the evidence in this case supports a conclusion that M.H. forcefully entered Brown's bedroom—a residential structure—and that M.H. did not have the "right to be in" Brown's bedroom. *See* § 13-419(C)(1). Accordingly, because there was "the slightest evidence" on which to base the giving of the instruction, the trial court erred by denying Brown's request for a jury instruction under § 13-419.

## IV.

¶35 Section 13-418 outlines the justification defense of a residential structure. The statute reads, in relevant part:

> [A] person is justified in threatening to use or using physical force or deadly physical force against another person if the person reasonably believes himself or another person to be in imminent peril of death or serious physical injury and the person against whom the physical force or deadly physical force is threatened or used was in the process of unlawfully or forcefully entering, or had unlawfully or forcefully entered, a residential structure.

§ 13-418(A).

¶36 The court of appeals concluded that the trial court did not abuse its discretion in declining to instruct the jury regarding defense of residential structure because "no evidence suggested that Brown 'reasonably believe[d]' he was 'in imminent peril of death or serious physical injury'" and "Brown could not have reasonably believed M.H. was 'unlawfully or forcefully entering'" a residential structure. *Brown*, 2024 WL 2263468, at *4 ¶ 23 (alteration in original) (quoting § 13-418(A)).

¶37 Because we conclude that § 13-419(B)'s presumption applies, M.H. is "presumed to pose an imminent threat of unlawful deadly harm" to Brown while he was in Brown's bedroom. Brown was therefore justified in "using physical force or deadly force" against M.H. *See* § 13-418(A). Accordingly, the trial court abused its discretion by refusing to instruct the jury regarding § 13-418.

¶38        But even without applying § 13-419's presumption, the trial court erred in denying Brown's request for an instruction under § 13-418. Although Brown testified that he did not feel threatened by M.H. during the microphone stand incident, this admission does not excuse the trial court's refusal to give this instruction. As previously noted, a defendant is entitled to an instruction "if the record contains the 'slightest evidence'" supporting a claim of self-defense. *King*, 225 Ariz. at 90 ¶ 14. Here, Brown went to his bedroom, locked the door "to keep [J.A. and M.H.] out," and, after the door was forcibly opened, began swinging the microphone stand to prevent J.A. and M.H. from entering his bedroom. Additionally, Brown testified that he sustained injuries from a fight with M.H. a week before this incident occurred and also stated that he was aware M.H. had a felony conviction for his involvement in a knife fight. Regardless of the fact that Brown did not feel threatened by M.H. when he swung the microphone stand, the circumstances surrounding the forced entry into his bedroom in addition to Brown's previous encounters with M.H. and his knowledge of M.H.'s prior felony conviction are sufficient for a jury to potentially conclude that Brown was "in imminent peril of death or serious physical injury" when M.H. entered Brown's bedroom. Thus, even without § 13-419's presumption, the trial court abused its discretion in refusing Brown's requested instruction under § 13-418.

## V.

¶39        Under Arizona law, an individual is justified in threatening or using force to defend their "premises." Section 13-407(A) addresses this defense, and provides in part that:

> A person . . . in lawful possession or control of premises is justified in threatening to use deadly physical force or in threatening or using physical force against another when . . . a reasonable person would believe it immediately necessary to prevent or terminate the commission or attempted commission of a criminal trespass by the other person in or upon the premises.

§ 13-407(A).

¶40        Section 13-407(C) defines "premises" as "any real property and any structure, movable or immovable, permanent or temporary, adapted for both human residence and lodging whether occupied or not."

Applying the statute's clear and unequivocal language here reveals that Brown's bedroom qualifies as a "premises"—it is a permanent, immovable structure adaptable for both human residence and lodging. *See supra* ¶23. Thus, we conclude that Brown's bedroom satisfies the definition of "premises" under § 13-407(C).

**¶41**　　　The court of appeals determined that the defense of premises instruction was not warranted because "Brown could not have reasonably believed that force was 'immediately necessary to prevent or terminate . . . a criminal trespass.'" *Brown*, 2024 WL 2263468, at *4 ¶ 22 (alteration in original) (quoting § 13-407(A)). The court also reasoned that "[n]o trespass was possible given that Brown knew J.A. had allowed M.H. to be present." *Id.* Not so.

**¶42**　　　As noted above, an individual is justified in threatening or using force to defend their premises if "a reasonable person would believe it immediately necessary to prevent or terminate the commission or attempted commission of a criminal trespass by the other person." § 13-407(A). A person commits "criminal trespass" by "knowingly entering or remaining unlawfully" in or on another's property. *See* §§ 13-1502 to -1504.

**¶43**　　　Here, Brown was in lawful control of the premises—his bedroom—when M.H. unlawfully entered without his consent. Under § 13-419(A), Brown's use of physical force against M.H. is presumed to be necessary once the bedroom door was forcibly opened over Brown's objection and M.H. entered the bedroom. *See supra* ¶¶ 28–34. Thus, the trial court abused its discretion by denying Brown's requested instruction under § 13-407(A).

**¶44**　　　Furthermore, the court of appeals erroneously concluded that the facts, absent § 13-419's presumption, were insufficient to support a defense of premises instruction. *Brown*, 2024 WL 2263468, at *4 ¶ 22. The court determined that an instruction under § 13-407 was not warranted because "[n]o trespass was possible given that Brown knew J.A. had allowed M.H. to be present." *Id.* This was error. *See supra* ¶ 33. Although J.A. may have invited M.H. into the condominium, Brown did not invite M.H. into his bedroom; in fact, he specifically prohibited him from entering before J.A. and M.H. forcefully breached Brown's bedroom door. M.H. therefore had no legal right to be there. Section 13-407(A)'s elements were established here: Brown was in lawful control of his bedroom, and a reasonable person could conclude that force was necessary to prevent M.H.

from unlawfully trespassing into the bedroom. Accordingly, the trial court abused its discretion by denying Brown's requested instruction.

**VI.**

**¶45** The State argues that the discrepancy between Arizona's burglary statutes and the model burglary provisions within the Model Penal Code ("MPC") expressly indicates the Legislature's intent to exclude individual rooms from the definition of "residential structure." We are not persuaded by the State's argument.

**¶46** The Legislature largely relied on the MPC when drafting and revising Arizona's criminal statutes. *State v. Bowsher*, 225 Ariz. 586, 587–88 ¶¶ 9–10 (2010); *State v. Mott*, 187 Ariz. 536, 540 (1997). Thus, this Court has stated that the Legislature's deviation from the MPC provisions may indicate the Legislature's rejection of that language. *Bowsher*, 225 Ariz. at 588 ¶ 10; *see King*, 225 Ariz. at 90 ¶¶ 10–12 (concluding that the Legislature's adoption of an objective standard for self-defense rather than the MPC's subjective standard indicates that self-defense "no longer turns on the defendant's subjective motivations"). However, when the Legislature fails to adopt the applicable MPC provision but also does not enact a statutory provision with directly contrary language, this Court is not bound to infer legislative rejection of the MPC's language. *See State v. Willoughby*, 181 Ariz. 530, 538 (1995) (adopting the MPC's approach requiring the state to prove jurisdictional facts when the Legislature had neither adopted the relevant MPC provision nor enacted language contrary to the MPC).

**¶47** Here, the Legislature did not enact the MPC's burglary provision but also did not enact a provision with directly contrary language indicating that it rejected the idea that individual bedrooms could constitute residential structures. Section 221.1 of the MPC defines burglary as entering a "building or occupied structure, or separately secured or occupied portion thereof" with a "purpose to commit a crime therein." In contrast, Arizona defines burglary as "entering or remaining unlawfully" in or on different types of structures "with the intent to commit any theft or any felony therein." *See* A.R.S. §§ 13-1506 to -1508. Although Arizona's burglary statutes deviate from the MPC's definition of burglary, they do not reflect a specific legislative intent to exclude bedrooms from the definition of residential structures. Unlike the MPC—which requires entry into an *occupied* structure—occupancy is not a basic element of burglary in Arizona; rather, whether a structure is occupied affects the *degree* of the

burglary charge. *See* § 13-1501(11) (expressly stating that the nature of a residential structure remains the same "whether occupied or not"); §§ 13-1506 to -1508 (stating that entry into residential structures may support charges of first or second degree burglary while entry into nonresidential structures, fenced commercial structures, and residential yards may only support a charge of third degree burglary). Given Arizona's approach to defining the elements of burglary and the differing classifications, which vary significantly from the MPC's approach, there is no indication that the Legislature intended to specifically reject the MPC's treatment of individual bedrooms as residential structures. Accordingly, we conclude that the differences in the language used by the Legislature and the MPC do not sufficiently indicate legislative intent to exclude bedrooms from the broader category of residential structures within the context of justification defenses.

¶48        Additionally, the State argues that *State v. Gardella*, 156 Ariz. 340, 342 (App. 1988), established precedent that a bedroom cannot be a residential structure on its own because it is necessarily a smaller component of a larger residential structure. *Gardella* is distinguishable. In *Gardella*, the court of appeals considered whether an attached motel laundry room—a nonresidential area—could be considered a residential structure. 156 Ariz. at 340. The court created a two-step test based on interpretations of the word "residence" from other jurisdictions. *Id.* at 340, 342. In its analysis, the court first considered whether the main building was used for commercial or residential purposes. *Id.* at 342. The court then stated that if the main building is residential, "lesser included structures" are "subsumed" into the greater residential structure if they "make[] the building more suitable, comfortable or enjoyable for human occupancy" but that lesser included structures of commercial buildings must be independently assessed for their purpose. *Id.* Applying its test, the court concluded that the motel was used for commercial purposes and that the laundry room, standing alone, was not a residential structure. *Id.*

¶49        The State seeks to expand the scope and applicability of *Gardella*'s holding. The *Gardella* court was tasked with determining whether a clearly nonresidential laundry area could be considered part of a motel, which it ultimately determined was a commercial structure. Accordingly, the court's analysis on "lesser included structures" attached to or located within the residential structure—including its determination that the greater residential structure would "subsume" any lesser structure—was dicta that was unnecessary to its outcome, and we decline to adopt such an analysis here. *See Ariz. Corp. Comm'n v. Mountain States*

*Tel. & Tel. Co.*, 71 Ariz. 404, 412 (1951) (defining dicta). In fact, subsequent opinions applying *Gardella*'s reasoning were largely concerned with whether clearly nonresidential areas, such as garages or storage units, could be deemed "attached" to a connected residential structure such as an apartment or house. *See, e.g.*, *State v. Browning*, 175 Ariz. 236, 237 (App. 1993) (determining whether a separate but attached garage constituted a residential structure); *State v. Ekmanis*, 183 Ariz. 180, 181 (App. 1995) (considering whether a storage room of a patio home was a residential structure). Because the facts in *Gardella* are distinguishable from the circumstances here, the State's reliance—as well as the dissent's—on *Gardella* is misplaced.

**¶50**       The Legislature's declaration of policy offers further evidence suggesting that a securable bedroom is included within the definition of residential structure. In the Legislature's declaration of policy, articulated when it adopted §§ 13-418 and -419 in 2006 as emergency measures, the Legislature expressed its intent that "[a] person should be entitled to safe and peaceful enjoyment within the home even from residents of the same household." 2006 Ariz. Sess. Laws ch. 199, § 4 (2d Reg. Sess.). Although the 2006 declaration of policy addressed the justification defense regarding another statute—§ 13-411's use of force in crime prevention—the Legislature's primary concern in its declaration of policy was for:

> [T]he justification in use of force . . . [to be] applicable to all victims in domestic violence . . . whether such domestic violence occurs in a private or public place and whether or not the victim and the perpetrator of domestic violence are residents of the same home.

*Id.* The broad language in the legislative declaration of policy supports our conclusion that the terms "residential structure" and "structure" as used in the justification statutes at issue in this case include an individual's right to defend oneself when another person invades their separately securable bedroom. *Cf. Grand Canyon Tr. v. Ariz. Corp. Comm'n*, 210 Ariz. 30, 40 ¶ 43 (App. 2005) ("When . . . the [L]egislature specifies its purpose in the session law that contains the statute, it is appropriate to interpret the statutory provisions in light of that enacted purpose.").

**¶51**       This declaration emphasized the Legislature's recognition of an individual's right to the "safe and peaceful enjoyment" of their own home, even against encroachment from residents of the same household, and underscores that all individuals within a shared residence enjoy legal

15

protections against intrusion. "We presume that the [L]egislature knows the existing law when it enacts or modifies a statute." *State v. Garza Rodriguez*, 164 Ariz. 107, 111 (1990). Thus, given the Legislature's intent to permit victims to use defensive force against other household members, we believe that characterizing Brown's separately securable bedroom as a residential structure will not produce "absurd results," lead to the "practical problems" raised by the dissent that would frustrate the Legislature's intent, or run afoul of our existing criminal statutory scheme. Rather, we agree that allowing Brown to assert a justification defense based on his ability to exclude others from his bedroom aligns with the Legislature's intent to protect individuals in their private living space and our interpretation also gives effect to what we have recognized as "the fundamental right of self-defense." *State v. Jackson*, 94 Ariz. 117, 122 (1963).

## VII.

¶52        Finally, we reject the State's argument that any error created by the failure to give Brown's requested justification jury instructions was harmless. "When an issue is raised but erroneously ruled on by the trial court, this court reviews for harmless error." *State v. Bible*, 175 Ariz. 549, 588 (1993). The state bears the burden of showing harmless error, and we consider whether the error was harmless under the totality of the circumstances. *Id.*; *State v. Strong*, 258 Ariz. 184, 200 ¶ 45 (2024). An error is harmless if the state proves beyond a reasonable doubt that the error had no influence on the jury's judgment. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 18 (2005); *Weaver v. Massachusetts*, 582 U.S. 286, 294 (2017). In essence, the state must demonstrate that even with the error, no reasonable jury could have found that the state failed to prove its case beyond a reasonable doubt. *See State v. Ring*, 204 Ariz. 534, 561 ¶ 82 (2003).

¶53        The State argues that no reasonable jury could have concluded "that an objectively reasonable person in Brown's position would believe it was immediately necessary to use physical force against [M.H.] to prevent criminal trespass or to prevent imminent peril of death or serious physical injury." It asserts that because Brown testified that he did not feel threatened by M.H. before he swung the microphone stand and because he knew that M.H. was an invitee to the condominium, no reasonable jury could have concluded that he was justified in using force even with the benefit of § 13-419's presumptions. The State further claims that because the testimony shows that J.A. forced Brown's door open, Brown could not have believed that M.H. was in the process of unlawfully or forcefully entering the room. We disagree.

¶54          As discussed above, Brown's knowledge that J.A. invited M.H. to the condominium does not alter or affect his right to exclude M.H. from his private bedroom. *See supra* ¶ 33. Because Brown had the right to exclude M.H. from his bedroom, a jury could conclude that Brown reasonably believed force was necessary to prevent a criminal trespass. *See* § 13-407(A). Additionally, even though Brown testified that he did not feel threatened by M.H., § 13-419's presumption establishes that M.H. is presumed to pose an imminent threat. *See supra* ¶ 37. A reasonable jury could also conclude that Brown's previous knowledge regarding M.H.—including M.H.'s prior felony conviction involving the use of a knife, the prior altercation between Brown and M.H., and M.H.'s prior physical altercations with others—would cause a reasonable person to anticipate harm.

¶55          We have previously concluded that a trial court's decision to give a jury instruction is not harmless error if it "eliminat[ed] the state's burden of proof" and permits a reasonable jury to conclude that the state did not have to disprove self-defense beyond a reasonable doubt. *State v. Slemmer*, 170 Ariz. 174, 178 (1991). It logically follows that a *failure* to give an instruction is also not harmless if it removes the state's burden of proving that the defendant was not justified in using force against the victim. Had the trial court instructed the jury as Brown requested, the State would have needed to demonstrate the absence of such justification beyond a reasonable doubt. Because the trial court's refusal to instruct the jury on Brown's justification defenses eliminated the State's burden of proof regarding these defenses, the error was not harmless.

## CONCLUSION

¶56          We vacate paragraphs 12 through 23 and 35 of the court of appeals' memorandum decision, affirm the remainder of the decision, reverse the trial court, vacate Brown's conviction and sentence, and remand the case to the trial court for a new trial consistent with this Opinion.

TIMMER, C.J., Dissenting.

¶57     The trial court instructed the jury on three justification defenses: self-defense, defense of a third person, and defense of property. *See* A.R.S. §§ 13-404, -406, -408. Nevertheless, Brown argues the court incorrectly declined to additionally instruct the jury on defense of premises and defense of a residential structure. *See* A.R.S. §§ 13-407, -418. Brown was entitled to those instructions only if his bedroom qualified as a "residential structure." I agree with the trial court that a bedroom, when only one part of an occupant's entire residence, is not itself a residential structure under the justification statutes. The majority's contrary conclusion lacks statutory support and, in my view, invites confusion in future cases. With great respect for my colleagues, I dissent.

¶58     Both § 13-407 (defense of premises) and § 13-418 (defense of a residential structure) hinge on whether the place at issue qualifies as a "residential structure."[2] Section 13-1501(11) defines "residential structure" as "any structure . . . that is adapted for both human residence and lodging whether occupied or not." Section 13–1501(12), in turn, defines "structure," as relevant here, as "any building . . . or place with sides and a floor that is separately securable from any other structure attached to it and that is used for lodging."

¶59     After examining the ordinary meanings of "residence," "lodging," and "securable," the majority defines a "residential structure" as "(1) any place with sides and a floor, (2) that is separately securable from any other structure attached to it, and (3) is adapted for both human residence and lodging." *See supra* ¶ 22. Because this definition "[does not] preclude a residential structure from being nested within another residential structure," the majority concludes that "a residential structure [does not have to be] completely distinct from any other residential structure." *See id.* Thus, my colleagues conclude Brown's bedroom

_____

[2] Section 13-407 does not itself use the phrase "residential structure" when authorizing force to stop a criminal trespass. That phrase instead appears in the statutes that define criminal trespass. *See* A.R.S. §§ 13-1501(11), -1504(A)(1). The definition in § 13-1501(11) describes a "residential structure" in the same way § 13-407 describes premises adapted for human residence and lodging, and it is also the definition applied in § 13-418. *See* § 13-418(C)(1). At bottom, both §§ 13-407 and 13-418 rest on the same statutory definition of "residential structure" in § 13-1501(11).

18

constitutes a "residential structure" because it has walls and a floor, it is adapted for residential use, and it is securable from the rest of his condominium. *See supra* ¶ 23.

**¶60**     I disagree that a "residential structure" under §§ 13-407 and -418 includes a bedroom within the occupant's residence. First, the fact a bedroom can be locked is insufficient to make it a "structure." Section 13-1501(12) does not require that a place with "sides and a floor" merely be "securable" to be a "structure." Instead, it requires that the place be "*separately* securable *from any other structure* attached to it." § 13-1501(12) (emphasis added). My colleagues largely ignore these italicized words. But to give them meaning, as we must, I conclude that a place must be capable of being secured on its own separately from an attached structure. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). And because the attached "structure" must itself be capable of being "separately securable" from the place at issue, *see* § 13-1501(12), the rest of an occupant's own residential living space—which is not separately securable from the occupant's bedroom—cannot constitute the "attached structure," as the majority asserts. *See supra* ¶ 23. An "attached structure" within the same building must be a space that can itself be "separately secured"—such as another condominium unit, a hotel room, a dormitory room, an exercise room, or a laundry room. A bedroom within the occupant's larger residential unit, by itself, cannot be secured from those spaces; only the entire residence can. *See State v. Bon*, 236 Ariz. 249, 252 ¶ 10 (App. 2014) (interpreting § 13-1501(12) as applying "[not to] all parts of a single structure" but to "two 'separately securable' structures that are attached"). This "separately securable" requirement "help[s] distinguish between residential and commercial structures found within or attached to another structure." *Id.*

**¶61**     The court of appeals' decision in *State v. Gardella*, 156 Ariz. 340 (App. 1988), is illustrative. The issue there was whether the defendant committed burglary of a non-residential structure by entering a motel's laundry room through an outside door. *Id.* at 340–41. The defendant unsuccessfully argued that the laundry room was part of the motel and therefore a residential structure, so he was wrongly convicted of burglarizing a non-residential structure. *See id.* at 341–42. The court implicitly recognized that if the defendant had entered a motel room, he would have burglarized a "residential structure" because the room was separately securable from any other attached structure—like another motel

room—and was adapted for lodging. *See id.* at 342. But because the defendant entered the laundry room, which was not adapted for lodging or residence, the defendant committed a non-residential burglary. *See id.*

¶62 Second, the majority's narrow focus on a bedroom's use ignores that the room can form part of an occupant's greater residence. *See supra* ¶ 23. Section 13-1501(11) defines "residential structure" as a structure "adapted for both human residence and lodging." A residence is generally more than a place to sleep. Other than with student dormitories, hotel rooms, and similar abodes, a structure "adapted for both human residence and lodging" typically includes a kitchen, bathroom, and other living areas that together make the home suitable and comfortable for human occupancy. *Gardella* recognized as much, explaining that "'residence' includes everything connected with the residential structure to make it more suitable, comfortable or enjoyable for human occupancy." *See* 156 Ariz. at 342; *see also State v. Ekmanis*, 183 Ariz. 180, 182–83 (App. 1995) (relying on *Gardella*'s description and concluding an attached storage room was part of the home); *State v. Browning*, 175 Ariz. 236, 237 (App. 1993) (concluding that "an attached garage with a connecting door to the living quarters of a private home" is part of the residence for purposes of aggravated assault). In short, the entire home is the castle from which the lawful possessor may justifiably make a stand against intruders. *See Castle Doctrine*, Black's Law Dictionary (12th ed. 2024) (describing the "castle doctrine" as a theory that there is no duty to retreat before using deadly force to protect one's own home or inhabitants from attack). Sometimes that castle will be a single bedroom (e.g., a hotel or boarding house room), but most often it will be a larger residence with multiple rooms. Thus, for this additional reason, where an occupant's residence or lodging transcends a bedroom and is self-contained, the entire living space should be considered the "residential structure."

¶63 This interpretation does not "effectively rewrite" the statutory definitions of "residential structure" and "structure," as the majority asserts. *See supra* ¶ 27. To the contrary, the statutory text supports my view. The definitional statutes contemplate a single structure adapted for residency or lodging and do not address components of those structures. *See* § 13-1501(11) ("'Residential structure' means . . . ."); § 13-1501(12) ("'Structure' means . . . ."). Thus, in my view, to determine what constitutes a "residential structure," we should identify what constitutes the occupant's entire space "adapted for both human residence and lodging." Sometimes, that will be a single room—a kitchen, bathroom, and other living areas are not required. But often it is a larger living space.

¶64   Third, applying the majority's decision creates practical problems. *See State v. Agundez-Martinez*, 256 Ariz. 445, 447 ¶ 10 (2024) (interpreting text by examining, in part, "its effects and consequences"). Is a bedroom both part of a "residential structure" (the home) and its own "residential structure" (the room)? Does a burglar who enters multiple bedrooms, storage rooms, or even locking closets commit one or several burglaries? And if a home office is entered, is that a non-residential burglary because that "structure" is not used for human residence and lodging? Recognizing that individual rooms within either a stand-alone residence, a residential unit inside a multi-unit building, or even a hotel room are not themselves "residential structures" avoids these issues.

¶65   Fourth, and finally, I disagree with the majority that the Legislature's declaration of policy concerning domestic violence has any bearing on the interpretation of "residential structure." *See supra* ¶¶ 50–51. The definitions of "residential structure" and "structure" are set forth in the criminal trespass and burglary statutes and were neither enacted nor altered in the session law containing the Legislature's policy declaration. *Compare* §§ 13-1501(11)–(12) *with* 2006 Ariz. Sess. Laws ch. 199, § 4 (2d Reg. Sess.). Regardless, the policy declaration is specific to A.R.S. § 13-411, which provides a justification defense for use of force in crime prevention and clarifies that the defense applies to domestic violence victims, even if they reside with their abusers. *See* 2006 Ariz. Sess. Laws ch. 199, § 4 (2d Reg. Sess.). If anything, the fact the Legislature excluded §§ 13-407 and -418 from its policy statement supports my view that these defenses do not apply to defending separate rooms within a single residence. If they did, the Legislature surely would have clarified that a domestic violence victim sharing the same residence as an abuser could raise these defenses.

¶66   Turning to the record here, I conclude Brown was not entitled to the defense-of-premises or defense-of-a-residence jury instructions. He resided in the entire condominium, including his bedroom. Because the bedroom was not itself separately securable from other structures attached to the condominium, it is not a "structure." *See* § 13-1501(12). And because it is not a "structure," it cannot be a "residential structure." *See* § 13-1501(11). The "residential structure" here was the entire condominium. M.H. was an invited guest, so he was lawfully present in the condominium, making §§ 13-407 and -418 inapplicable. I would therefore affirm the trial court's judgment.